No. 36,966

O. F. SULLIVAN, *Appellee*, v. PARAMOUNT FILM DISTRIBUTING CORPORATION, *Appellant* (R. M. COPELAND, Defendant).

No. 36,967

O. F. SULLIVAN, *Appellee*, v. PARAMOUNT FILM DISTRIBUTING CORPORATION, *Appellant* (R. M. COPELAND, Defendant).

(187 P. 2d 360)

Opinion filed December 6, 1947.

*Homer V. Gooing,* of Wichita, argued the cause, and *Howard T. Fleeson, Wayne Coulson, Paul R. Kitch, Manford Holly* and *Dale M. Stucky,* all of Wichita, were with him on the briefs for the appellant.

*Austin M. Cowan,* of Wichita, argued the cause, and *Ray H. Tinder,* of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: These cases were consolidated for hearing in this court for the reason that the same legal principles apply to both of them. The abstract and briefs are confined to case No. 36,966. That was an action to recover a money judgment for damages for the alleged breach of a contract and other grievances. The defendants named are the Paramount Film Distributing Corporation (hereinafter called defendant) and R. M.. Copeland, described as the branch manager of defendant. No service of process was had upon him and the case proceeded against the defendant alone.

Defendant moved for an order requiring plaintiff to make his petition definite and certain as to the contract relied upon. This was sustained in part only, and plaintiff filed an amendment to the petition pertaining to the contract. Defendant's motion to strike a large part of the petition was overruled, as was also its motion to require plaintiff to separately state and number his several purported causes of action. Defendant then demurred to the petition

as amended upon the grounds, *first,* that the court had no jurisdiction of defendant; *second,* that several pretended causes of action are improperly joined; and *third,* that the petition as amended does not state facts sufficient to constitute a cause of action against this defendant on a single and definite theory. This demurrer was overruled and defendant has appealed.

We summarize or quote the petition as follows: That plaintiff is a resident of Wichita, engaged in operating motion-picture shows in three named theaters; that defendant is a corporation duly organized and existing under the laws of the state of ———— and is known as a distributor of films for motion-picture shows; and for many years has furnished plaintiff with films for display in his motion-picture theaters; that plaintiff orally contracted with defendant, through its agent, Harry Wheeler, in Wichita, on or about April 4, 1946, for the showing of the film "The Virginian," at one of his theaters from June 23 to June 26, inclusive, and at another of his theaters from June 27 to June 29, inclusive, 1946; that the rental charge for the film was to be paid defendant on a percentage of the gross receipts. The petition continues (defendant moved to strike the part printed in italics):

*"That said distributor, as well as other distributors, have insisted upon checking the gross receipts. That the plaintiff has always consented and encouraged distributors, including the defendant corporation, to check his books and accounts in any reasonable and lawful manner. That the defendant corporation has from time to time prior to the dates herein set forth insisted upon using clocks to check attendance. That the plaintiff has always refused such permission for the reason that same is not a reasonable method of checking attendance, is in violation of the city ordinance as hereinafter set forth and was not a reasonable method of checking attendance at the showing of films.*

*"4. That the city of Wichita has passed an ordinance No. ——, which charges license fees for clockers or people checking with the use of clocks on the streets of Wichita. That the defendant corporation had used clockers or checkers using clocks on the streets of Wichita in front of said moving picture shows but when said ordinance became effective failed and neglected and refused to take out the licenses at $5.00 per day for each checker as provided therein. That the defendant corporation, in order to avoid and evade the provisions of said ordinance and avoid the payment of the license fee therein provided prior to June 5, 1946, demanded of the plaintiff that he permit clockers and checkers using clocks to stand off the street and inside the plaintiff's moving picture show houses in order to clock people going into said moving picture houses. That the plaintiff had urged the passage of said ordinance above referred to and that the same has been copied and followed*

*in many cities in the United States. That the enactment of said clocking
ordinance has been and is very obnoxious to distributors and that said dis-
tributors have opposed the passage of similar ordinances. That the defend-
ant corporation and the defendant Copeland have become incensed at the
plaintiff because of his participation in the enactment of such ordinance.*

"5. *That the defendant Copeland and the defendant Distributing Corpora-
tion and others to the plaintiff unknown, sometime prior to June 5, 1946, the
exact date being unknown to the plaintiff but well known to said defendants,
entered into a conspiracy to compel the plaintiff and others in like situation
to permit the use of clockers in said moving picture shows with the intent of
evading the ordinance of the city of Wichita above set forth and similar ordi-
nances, and with the intent to create a monopoly in the distribution of films
and the manner thereof. That the distribution of films and exhibition thereof
is trade and commerce. That said two defendants and others unknown to the
plaintiff, conspired and confederated together, creating a combination of cap-
ital and skill and acts of two or more persons, firms and corporations, for the
purpose herein set forth and to create and carry out restrictions in trade and
commerce and to carry out restrictions in the full and free pursuit of business
authorized and permitted by the laws of the state of Kansas, to-wit, the dis-
play and exhibition of motion picture films, which said combination and re-
strictions were and are as more fully set forth.* That with the purpose and
intent aforesaid *the defendant Copeland and the defendant Distributing Cor-
poration did on or about June 5, 1946, while the plaintiff was away on a va-
cation, demand of and from the plaintiff and his employees that plaintiff
permit the Distributing Corporation to allow clockers or checkers with clocks
on the premises of said theaters and just off the street, and threatened that
if he did not so allow checkers and clockers acting for and on behalf of the
defendant corporation the said defendants would cancel or cause to be can-
celled the plaintiff's contracts and agreements for the showing of films, more
particularly the showing of film known as "The Virginian."* That said demand
and threat was addressed to the plaintiff for the reason, among others, that
the plaintiff had been active in the enactment or securing the enactment of
the ordinance of the city of Wichita above mentioned. *That upon the re-
fusal of the plaintiff to comply with said demand, the defendant corporation
and the defendant Copeland refused to deliver the film known as "The Vir-
ginian"* and breached the Distributing Corporation's contract with plaintiff for
the delivery of said film for exhibition at the theaters and on the dates here-
inbefore mentioned. That while the defendants made said demand upon the
plaintiff and refused to deliver said film to the plaintiff, the defendant did
not make like demands and did not breach distribution contracts of films with
large exhibitors in the same trade territory and, to-wit, the state of Kansas.
That said large exhibitors were located in sections and communities and cities
of the state and in portions thereof different from that of the plaintiff. That
said demand and acts were done for the purpose of destroying competition.
That the defendants discriminated against the plaintiff in the particulars
herein mentioned, with the intent and purpose to restrict the trade and busi-
ness of the plaintiff. That said Distributing Corporation is and was engaged
in business in the state of Kansas and engaged in the distribution of a com-*

*modity in general use, i. e., films for exhibition purposes. That the purpose
of said discrimination was to sell to the plaintiff the right to exhibit films at
a higher rate than charged for like films under like circumstances to others
within the state of Kansas. That said demand was made by the defendants
and each of them with the intent to compel the plaintiff to do an act against
his will, to-wit, submit to checking with clockers or clocks on his premises for
the purpose of evading the provisions of said ordinance and said demand was
with menaces and with intent to do injury to the business and property of
the plaintiff, to-wit, the carrying on of his business of exhibiting motion pic-
tures, and such demand was made both verbally and in writing as herein set
forth. That the use of said clockers or checkers with clocks reflects on the
standing of the theater, and is a definite indication to the public and patrons
of the theater that the distributor does not trust the exhibitor. That with
full knowledge of said facts as herein set forth and that said action of the de-
fendants would hold plaintiff up to ridicule and contempt of the public and
society, the defendants and each of them made the demand and committed
the acts aforesaid for the purpose of holding plaintiff up to ridicule and con-
tempt of the public and society. That said clocking is not accurate and does
not tend to check attendance or the gross receipts because the clocker placed
in the situation or position demanded by the defendants and each of them
would clock all parties and persons going to pop-corn and other concession
stands, and would clock persons who go to get their children and who do not
seek admission to the theater proper, and would include in the clockings per-
sons who do not buy admissions and who do not actually enter the theater
where the pictures are exhibited. That the placing of clockers inside the
theater building and outside of the doors of the theater proper as demanded
by the defendants and each of them was not made in good faith but as a sub-
terfuge for the purpose of evading the payment of license fees exacted by the
city of Wichita under said ordinance, and for the purpose of harassing the
plaintiff and restricting his business and causing him embarrassment with the
public and injuring him in his business as above set forth. That by reason
of the conduct of the defendants and each of them, the plaintiff was unable
to show a film of the kind and character of "The Virginian" and because of
the failure to notify the plaintiff promptly that they would not furnish said
film, the plaintiff was unable to get a film of like character or standing and
the result was that his attendance fell off and he was damaged as herein set
forth. That included in said damages was the expense necessary and incident
to securing another film.* That by reason of the premises, plaintiff suffered
damages in the sum of Two Thousand Nine Hundred Ninety-nine Dollars
($2,999.00). *That said acts of the defendants and each of them were unlawful
as herein set forth, were malicious and done for the purpose of injuring the
plaintiff in his business; that said demand was unreasonable, capricious and
unauthorized.*

"6. *That the defendant corporation is one of the large distributors in the
motion picture industry, and a distributor of films which are nationally known
and well advertised, and that the refusal of defendants to furnish the film
above mentioned to the plaintiff will make it impossible for the plaintiff to
secure some of the films which are in demand by the public. That said de-*

*fendant corporation is the sole and only distributor in this territory of said film and like films and the plaintiff has no other method or means of procuring such films for exhibition except through said defendant corporation, all of which is and was well known to the defendants and each of them at the times herein set forth. That the plaintiff had done business with the defendant Distributing Corporation for many years and had no difficulty of any consequence with said Distributing Corporation until the demand made as hereinbefore set forth. That defendants had no reason for refusing to furnish plaintiff with the film above set forth except the failure of the plaintiff to comply with defendants' unlawful and unreasonable demand as hereinbefore set forth.*

"Wherefore, plaintiff prays for judgment against the defendants and each of them in the sum of Two Thousand Nine Hundred and Ninety-nine Dollars ($2,999.00) and the costs of this action and for such other and further relief as to the court is just and equitable."

Defendant's motion respecting the contract was that plaintiff be required to make his allegations specific, definite and certain by stating whether the contract was in writing and if so to attach a copy thereof, and if oral "by stating the complete substance of such contract." In ruling upon the motion the court said:

". . . I will not require him, if the contract is oral, to cite [state] the complete substance but to state substantially the contents of the contract . . ."

All of defendant's motions were resisted by plaintiff. In this situation the petition must be construed strictly against the pleader. (See *Lofland v. Croman,* 152 Kan. 312, 103 P. 2d 772; *Frazier v. Cities Service Oil Co.,* 159 Kan. 665, 157 P. 2d 822.) Hence, we cannot be sure that the contract as last pleaded embodied all of its elements. For example, whether it included a provision authorizing defendant to check the attendance by any legal method. We shall not attempt a detailed analysis of the remainder of the petition. We think the court might very well have sustained defendant's motion to strike. Without determining whether this motion to strike should be treated as a demurrer and ruled upon as such, since defendant does not specifically urge such a holding, the fact that the motion was made, resisted and overruled has a definite bearing upon whether the general demurrer to the petition should have been sustained. (*Mead v. City of Coffeyville,* 152 Kan. 799, 801, 107 P. 2d 711.) We think it clear that paragraph 4 has no place in the petition. Issues joined upon the allegations contained therein would result in a trial which would resemble a family fuss as to who was to blame. Who favored or opposed the passage of the ordinance is immaterial. It is common for legislative bodies to have persons ap-

pearing before them or their committees advocating or opposing proposed legislation. After it is enacted by the legislative body each of the parties is entitled to such benefits and bound by such obligations as the legislative enactment provides. A similar question was considered in *Farmers Coöperative Commission Co. v. Wichita Board of Trade*, 121 Kan. 348, 246 Pac. 511. The fact that defendant, after the ordinance was passed, changed its method of checking the attendance so as not to violate the ordinance and at the same time accomplish its purpose is neither illegal nor reprehensible.

In the fifth paragraph there is a general allegation of a conspiracy between defendant, Copeland and others. Since Copeland was defendant's manager, and presumably its agent and employee, it is difficult to see how anything is added to the charge of conspiracy against defendant more than if Copeland's name had been omitted. The "and others" formed no basis for an intelligent defense. Passing those matters, it is the established rule that the general charge of the formation of a conspiracy is not an allegation upon which liability may be predicated. It is the specific action done under conspiracy which results in damage to a party that forms the basis for a cause of action. (*Stoner v. Wilson*, 140 Kan. 383, 36 P. 2d 999; *Rogers v. J. R. Oil and Drilling Co.*, 149 Kan. 807, 89 P. 2d 847.)

In this paragraph it is alleged that while defendant made demands upon plaintiff for permission to check the attendance in a particular way it did not make similar demands upon others who are not named. In the argument before the trial court counsel for plaintiff argued that this stated a violation of G. S. 1935, 50-149. While the petition follows with much argument on that question, it is devoid of issuable facts.

The petition contains some language which appears to charge defendant with violation of our statute (G. S. 1935, 21-2412). It also contains language which indicates plaintiff was charging defendant with violating our statute (G. S. 1935, 50-101 to 50-108). Perhaps there are some allegations tending to charge the violation of some other sections of our statute. Counsel for defendant, as appellant here, attempted to make a summary of the petition. Counsel for appellee express disagreement with that summary and state, "It is unnecessary to restate the substance of the petition. That instrument speaks for itself."

In this court counsel for appellant do not argue the first ground

of its demurrer, namely, that the court has no jurisdiction of defendant. They do argue the second ground, that several causes of action are improperly joined. We think it cannot be said that the petition is sufficiently specific to state several causes of action. With respect to the third ground of the demurrer, that the petition as amended does not state facts sufficient to constitute a cause of action "upon a single and definite theory," counsel for appellee point out that the words last quoted are not included in the statute (G. S. 1935, 60-705, *fifth*) as one of the grounds for the demurrer. Technically that is true. The quoted words may be treated as surplusage. The next previous section (G. S. 1935, 60-704) provides:

"The petition must contain: . . . *Second.* A statement of the facts constituting the cause of action, in ordinary, and concise language, and without repetition."

In *Grentner v. Fehrenschield,* 64 Kan. 764, 68 Pac. 619, it was held:

"The plaintiff must frame his petition upon a distinct and definite theory, and upon that theory the facts alleged must state a good cause of action. If the petition is not drawn upon a single and definite theory, or there is such a confusion of theories alleged that the court cannot determine from the general scope of the petition upon which of several theories a recovery is sought, it is insufficient." (Syl. ¶ 1.)

The doctrine of that case has been repeatedly followed and applied. See *McDowell v. Geist,* 134 Kan. 789, 8 P. 2d 372; *Sluss v. Brown-Crummer Inv. Co.,* 137 Kan. 847, 22 P. 2d 965; *Lofland v. Croman,* 152 Kan. 312, 103 P. 2d 772; *Staab v. Staab,* 158 Kan. 69, 145 P. 2d 447; *Frogge v. Kansas City Public Service Co.,* 159 Kan. 687, 157 P. 2d 537; *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 183 P. 2d 947.

Certainly the petition in question is not drawn in harmony with our statutes and the decisions just cited.

We think the court erred in not requiring plaintiff to plead the contract upon which he relied in full in overruling defendant's motion to strike, and in overruling defendant's general demurrer to the petition.

The judgment of the court below should be reversed with directions to sustain the demurrer to the petition upon the ground that it does not state facts sufficient to constitute a cause of action. It is so ordered.

Case No. 36,967 is governed by the same legal principles. It

differs from No. 36,966 only in that the film mentioned is "Lost Week End," the dates for exhibits are different, and the theater for exhibition is the "West." The judgment of the court below is reversed with directions to sustain defendant's demurrer to plaintiff's petition as amended.