**Frank E. CEASE, Plaintiff,**

v.

**SAFELITE GLASS CORP., Defendant.**

**No. 94–4113–SAC.**

United States District Court, D. Kansas.

Nov. 15, 1995.

H. Reed Walker, Barnett Law Firm, Chartered, Kansas City, KS, Mark D. Wasserstrom, Kansas City, MO, for plaintiff.

Karen R. Glickstein, W. James Foland, Shughart, Thomson & Kilroy, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

Frank Eugene Cease commenced this diversity of citizenship action against his former employer, Safelite Glass Corp. (Safelite), asserting a cause of action against Safelite for its alleged violation of K.S.A. 50–149, titled **"Unfair discriminations."** [1] Cease essentially alleges that Safelite engaged in predatory pricing in an effort to destroy competition—namely his own business, Auto Glass Express. Cease claims damages for lost profits in the amount of $12,312, damages to the value of his business in the

---

**1.** Cease has abandoned any claim based upon the theory of tortious interference with a contractual relationship.

amount of $100,000, and punitive damages in the amount of $503,260. Safelite denies Cease's claim and asserts a counterclaim against Cease.[2]

This case comes before the court upon Safelite's motion for summary judgment on Cease's claim based upon its alleged violation of K.S.A. 50–149. Safelite contends that Cease cannot demonstrate the existence of a genuine issue of material fact precluding summary judgment. Cease responds, arguing that he has identified sufficient facts to withstand Safelite's motion for summary judgment.

### Summary Judgment Standards

■ A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

■ The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not re-quired to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

■ If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.,* 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case."). When the nonmoving party will have the burden of proof at trial, " 'Rule 56(e) ... [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) (citations omitted); *see Martin,* 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 929 (7th Cir.1995); *see Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.,* 849 F.2d at 1273.

---

**2.** Safelite contends that Cease breached his fiduciary duty to it and committed a constructive fraud by forming and operating a competing business while employed by Safelite. Safelite contends that Cease "further breached his duties to Safelite, and furthered the fraud, by surreptitiously selling Safelite glass to [Cease's] competing business at a significant discount while still employed by Safelite." Safelite seeks compensatory and punitive damages.

■ More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

### Analysis

■ At the outset, the court notes that the plaintiff's response to the defendant's motion for summary judgment fails to comply with D.Kan. Rule 206[3] in several respects. The plaintiff has failed on some occasions to "refer with particularity to those portions of the records upon which the opposing party relies." D.Kan. Rule 206(c). Based upon the plaintiff's failure to meet the requirements of D.Kan.Rule 206(c), the court deems certain facts admitted. *See* D.Kan.Rule 206(c) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").[4] In addition, the plaintiff's affidavit, which indicates in part that Cease has "read the memorandum in opposition to the Motion for Summary Judgment filed in the case of *Cease v. Safelite Autoglass Corporation,* Case No. 94–4113–SAC in the United States District Court for the District of Kansas. The statements and facts contained therein are true and correct to the best of my knowledge and belief," fails to meet the requirements of Fed.R.Civ.P. 56(e) and D.Kan. Rule 206(c). *See Malek v. Mar-*

*tin Marietta Corp.,* 859 F.Supp. 458, 460–461 (D.Kan.1994). Therefore, the court has ignored factual assertions unsupported by proper materials. Despite these deficiencies, the court is compelled to deny Safelite's motion for summary judgment.

### K.S.A. 50–149

K.S.A. 50–149 provides:

Any person, firm or corporation, foreign or domestic, doing business in the state of Kansas, and engaged in the production, manufacture, distribution, sale or purchase of any commodity in general use, that shall intentionally for the purpose of destroying competition, discriminate between the different sections, communities, or cities of this state, by buying at a higher rate or selling at a lower rate, any such commodity, in one section, community or city, or any portion thereof, than is charged or paid for such commodity in other section, community, or city, after equalizing the distance from the point of production to the factory, for distribution, and freight rates therefrom, shall be deemed guilty of unfair discrimination.

K.S.A. 50–149 is apparently a criminal statute. K.S.A. 50–150 provides in pertinent part:

Any person violating any of the provisions of this act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed $5,000 or by imprisonment not exceeding one year, or by both such fine and imprisonment ... Violators of this act may also be enjoined or ousted from the continuing of such violations and such actions of this character may be commenced regardless of

---

**3.** Effective October 1, 1995, the local rules were superseded by the "Rules of Practice of the United States District Court for the District of Kansas." The relevant portion of D.Kan.Rule 206 is now found at D.Kan.Rule 56.1.

**4.** Safelite's reply brief states that "[t]here are no reported cases addressing the failure of a party to comply with D.Kan.Rule 206(c)." This court has discussed noncompliance with D.Kan.Rule

206(c) on numerous occasions in published opinions. *See, e.g., Rhodes v. Bob Florence Contractor, Inc.,* 890 F.Supp. 960, 964 (D.Kan.1995) ("Based upon the plaintiff's failure to meet the requirements of D.Kan.Rule 206(c), the court has deemed certain facts admitted.").

The court also pauses to mention that in federal court, procedural rules are governed by federal, not state law.

whether criminal proceedings have been instituted.

K.S.A. 50–151 provides in pertinent part:

> All prosecutions and proceedings brought to enforce the provisions of this act or to punish violators of this act must be brought by the attorney general, or at his or her direction, or at the direction of the governor. The attorney general shall have power, and it is his or her duty to investigate all complaints charging that this act has been violated....

Whether Kansas would recognize a private cause of action based upon a violation of K.S.A. 50–149 is far from certain. In its independent research of this statute, the court could find only one case discussing K.S.A. 50–149: *Sullivan v. Paramount Film Distributing Co.,* 164 Kan. 125, 131, 187 P.2d 360 (1947). In *Sullivan,* a movie theater operator sued a film distributor, alleging, *inter alia,* violation of K.S.A. 50–149. The plaintiff basically alleged that the film distributor discriminated in the price it charged the plaintiff in an attempt to destroy competition. In full, the Supreme Court of Kansas's discussion of K.S.A. 50–149 states:

> In this paragraph it is alleged that while defendant made demands upon plaintiff for permission to check the attendance in a particular way it did not make similar demands upon others who are not named. In the argument before the trial court counsel for plaintiff argued that this stated a violation of G.S.1935, 50–149. While the petition follows with much argument on that question, it is devoid of issuable facts.

164 Kan. at 130, 187 P.2d 360. The opinion does not otherwise discuss K.S.A. 50–149 and does not expressly decide whether Kansas would recognize a private cause of action for an alleged violation of K.S.A. 50–149.

■ Neither party dedicates any meaningful discussion to this crucial issue. Safelite's brief alludes to the issue. In a footnote, Safelite notes that K.S.A. 50–149 is apparently criminal in nature and does not specifically provide for a private cause of action. Safelite also cites *Sullivan.* The balance of Safelite's brief is dedicated to demonstrating that there is insufficient evidence to demonstrate that it violated K.S.A. 50–149. Cease simply assumes that Kansas would recognize a private cause of action based upon K.S.A. 50–149. Neither party analyzes the issue within the legal framework adopted by the Kansas Supreme Court for determining whether a private cause of action should be implied from a criminal state statute. The determination of whether a private cause of action should be implied from a penal statute involves a careful consideration of several factors. *See Greenlee v. Board of Clay County Comm'rs,* 241 Kan. 802, 805, 740 P.2d 606 (1987) (citing *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).[5] Decocted to its simplest form, the determination of whether or not a private cause of action should be inferred from a penal statute turns on the intent of legislature. See *Greenlee,* 241 Kan. at 806, 740 P.2d 606 (quoting *Harrod v. Latham,* 77 Kan. 466, 470–71, 95 P. 11 (1908)).

The court has serious doubts as to whether Kansas would recognize a private cause of action based upon an alleged violation of

---

5. In *Ash,* the Supreme Court suggested four relevant factors for determining whether a private cause of action should be implied from a federal statute:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose special benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? *See, e.g., National Railroad Passen-*

*ger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646 (1974) (Amtrak). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? *See, e.g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 423, 95 S.Ct. 1733, 1740, 44 L.Ed.2d 263 (1975); *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
422 U.S. at 78, 95 S.Ct. at 2087.

K.S.A. 50–149. The authority to enforce the statute is specifically delegated to the attorney general or the governor. This provision was apparently adopted so that other state actors could not institute a proceeding under this statute; consequently, it seems unlikely that the Kansas legislature impliedly created a private cause of action which might be instigated by any person deeming himself aggrieved. However, because the parties have not endeavored to adequately brief this issue, the court expresses no final opinion on the issue.

■■■ Because the parties have not adequately addressed this issue, for purposes of deciding Safelite's motion for summary judgment the court will at this juncture *simply assume* that Kansas would recognize a private cause of action based upon K.S.A. 50–149. Based upon a plain reading of the statute, as an essential element of his claim, Cease must prove that Safelite manipulated its prices with the intent to destroy competition in Kansas. Based upon the materials presented, a genuine issue of material fact precludes summary judgment.

Safelite sells glass for automobiles. Gene Cease was formerly employed as the manager of the Safelite retail location in Chanute, Kansas. Beginning in April 1993, while still employed by Safelite, Cease began to operate "Auto Glass Express", a competing business. Cease apparently left Safelite in September, 1993. Cease continues to operate Auto Glass Express today.

In the pretrial order, the parties stipulate that Safelite sold the same product at different prices in the State of Kansas at the same time. According to Cease, Safelite has decreased its prices in an effort to destroy his business. Safelite is apparently selling its product at a price that Cease cannot match or beat. Safelite admits that since Cease left, it has adopted a new pricing scheme, but contends that the scheme was adopted for legitimate, non-predatory reasons, such as a standardized dealer discount. Safelite also contends that it lowered prices to compete with competitors other than Cease.

■■■ Standing alone, the mere fact that Safelite is selling its product at a lower price than at the time Cease left Safelite's employ and/or that its prices are now lower than Cease's prices would be insufficient to demonstrate that Safelite had differentiated its prices with the intent to destroy competition. Nor would Cease's conclusory allegations that Safelite has lowered its prices in an attempt to destroy his business preclude summary judgment. However, Cease identifies testimony from persons who were apparently former Safelite employees which suggests that it is Safelite's company policy to destroy the business of any former employee who leaves Safelite to start a new business which competes with Safelite.[6] Safelite's only response to this evidence is that it "fail[s] to refute any of defendant's Uncontroverted Material Facts and fail[s] to address any material issue in this case." Safelite makes no other attempt to specifically challenge these statements describing its company policy. Contrary to Safelite's suggestion, this evidence is relevant to evaluating its intent when it lowered its prices in Kansas. *See* Fed.R.Evid. 401 ("Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the "evidence."). Although Safelite may be able to respond to this evi-

6. According to Cease's brief,

Safelite's specific intent to injure Cease's business is shown by a conversation of Safelite management overheard by Glen Clark in Lawrence, Kansas after Cease terminated with Safelite. When Clark was an employee of Safelite in Lawrence, Kansas, he overheard Steve Coring and Michael Scopec say that if a Safelite store manager quit Safelite and went into the auto glass installation business, Safelite would drive him out of business.

Any statement attributed to Glen Clark by Cease is simply based upon Cease's counsel's personal recollection of Clark's testimony from the time Clark's deposition was taken. Apparently the court reporter has lost Clark's deposition. Cease's brief simply indicates that "[Clark] is available for trial." Suffice it to say that the "recollections" of counsel are not a proper basis upon which the court may rely in evaluating a motion for summary judgment, and the court has not relied upon any statements attributed to Clark in denying Safelite's motion for summary judgment.

dence if this claim proceeds to trial, evidence of a company policy to destroy the competition of former employees clearly buttresses Cease's claim that Safelite has engaged in a concerted effort to destroy his business. Coupled with the other evidence submitted, the court believes that Cease has demonstrated, albeit narrowly, the existence of a genuine issue of material fact precluding summary judgment.

**Supplemental Briefs**

Based upon the party's failure to adequately brief an issue central to determining the viability of the plaintiff's claim, the court believes that additional briefing is necessary to resolve the issue raised by Safelite's motion for summary judgment. The court instructs the parties to file additional briefs discussing the following issues:

Would Kansas recognize an implied private cause of action based upon a violation of K.S.A. 50–149?

Safelite shall file its brief within ten days of the date this order is filed. Cease shall file his brief within ten days of the date Safelite files its brief. Upon receipt of the party's supplemental briefs, the court will, *sua sponte,* reconsider Safelite's motion for summary judgment on Cease's claim based upon Safelite's alleged violation of K.S.A. 50–149.

IT IS THEREFORE ORDERED that Safelite's motion for summary judgment (Dk. 60) is denied.

IT IS FURTHER ORDERED that the parties shall file supplemental briefs as set forth in the body of this opinion.