21 Kan. App. 2d 871 (1995)
In the Interest of J.D.D., K.W.J., and K.J.J., Minor Children under the Age of Eighteen.
No. 73,464
Court of Appeals of Kansas.
Opinion filed December 22, 1995.
Stephen Mosley, of Wichita, for appellant P.J.J.
Jerome R. Jones, of Wichita, for appellant D.D.
Darren K. Patterson, of El Dorado, for appellant L.J.
Aronda Strutt Kerns, of Kansas Department of Social and Rehabilitation Services, of Wichita, for appellee.
Before BRAZIL, C.J., GERNON and ROYSE, JJ.
ROYSE, J.:
The parents of J.D.D., K.W.J., and K.J.J. appeal from the district court's ruling which terminated their parental rights to the children.
P.J.J. is the mother of all three children. D.D. is the father of J.D.D., and L.J. is the father of K.W.J. and K.J.J. P.J.J. argues on appeal (1) the district court erred in permitting an interested party to participate in a hearing on a motion to terminate parental rights and (2) the Department of Social and Rehabilitation Services (SRS) did not use reasonable efforts to avoid removing two of the children from the home in June 1993. All three parents argue that there was insufficient evidence to support the termination of their parental rights.
P.J.J. argues on appeal that the district court erred in permitting the paternal grandparents of K.W.J. and K.J.J. to participate in the hearing on the motion to terminate parental rights. P.J.J. contends that custody issues, not the question of termination of parental rights, are the only matters of concern to interested parties.
K.S.A. 38-1541 provides in pertinent part:

*872 "Upon motion of any person with whom the child has been residing or who is within the fourth degree of relationship to the child and who desires to have standing to participate in the proceedings regarding the child, the court may order that the person may participate in the proceedings."
Whether this statute authorizes an interested party to participate in the termination hearing requires interpretation of a statute, which is a question of law. State v. Donlay, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993).
When a statute is plain and unambiguous, the court must give effect to the intent of the legislature rather than determine what the law should or should not be. Martindale v. Tenny, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). When construing a statute's language, the court should give words of common usage their natural and ordinary meaning. Bank IV Wichita v. Plein, 250 Kan. 701, 705-06, 830 P.2d 29 (1992). Legislative intent must be determined from a general consideration of the entire act and not from an isolated part thereof. Todd v. Kelly, 251 Kan. 512, 516, 837 P.2d 381 (1992).
K.S.A. 38-1541 provides that the court may enter an order authorizing an interested party to participate in "the proceedings." The provision contains no qualifying language to limit such participation to certain types of proceedings. Had the legislature wished to limit participation by interested parties to custody proceedings, it could have done so. It is not the function of the court to rewrite the statute. See Dougan, Administratrix v. McGrew, 187 Kan. 410, 415, 357 P.2d 319 (1960). Under K.S.A. 38-1541, the district court may allow an interested party to participate in termination proceedings.
K.S.A. 38-1541, moreover, sets forth a procedure to be used in cases under Chapter 38, Article 15, the Code for Care of Children. Termination of parental rights is one of the subjects treated in that Code. Thus, the Code contemplates that a court may allow an interested party to participate in a termination proceeding.
Even more to the point is K.S.A. 38-1582. This statute, which sets forth procedures to be used upon a request for termination of parental rights, contains an explicit reference to interested parties: "Prior to the commencement of the hearing the court shall deter *873 that due diligence has been used in determining the identity of the interested parties and in accomplishing service of process." 38-1582(b).
In summary; P.J.J.'s contention that interested parties may only participate in custody proceedings is without merit. The district court did not err in permitting interested parties to participate in a hearing on termination of parental rights.
P.J.J.'s second argument on appeal is that SRS did not use reasonable efforts to avoid removal of K.W.J. and K.J.J. from the home in June 1993. This argument relates to an order of protective custody signed by the court on June 2, 1993. P.J.J.'s notice of appeal, however, refers only to the district court's order of November 29, 1994, terminating her parental rights. Appellate court jurisdiction is limited to those rulings specified in the notice of appeal. Anderson v. Scheffler, 242 Kan. 857, 861, 752 P.2d 667 (1988); see K.S.A. 60-2103(b). Thus, because the order of protective custody was not mentioned in the notice of appeal, this issue is not properly before us.
P.J.J. also surmises that, because the district court had entered the protective orders, SRS was dissuaded from making reasonable efforts to reintegrate the family as required by K.S.A. 38-1563(h). She argues that it was improper to terminate her parental rights without attempting to reintegrate the family. This argument is without merit.
First, P.J.'s argument ignores the fact that 38-1563(h) provides alternate grounds for removing a child from a parent's custody: the existence of an emergency or reasonable efforts have been made to prevent or eliminate the need for removal of the child. P.J.J.'s argument overlooks the district court's finding that an emergency existed. Second, this record is replete with efforts to keep the children in the home, efforts which all proved to be unsuccessful. This action was filed in 1990. The children were initially placed in protective custody and then ordered to remain in the temporary custody of SRS. In November 1991, the district court gave permission to SRS to place the children back in the home of P.J.J. and L.J. The children were again removed from the home in February 1992 and returned to the home in August 1992. In February 1993, SRS *874 was relieved of custody. In June 1993, the district court again placed the children in the custody of SRS, with authority to place the children in the homes of other relatives. P.J.J.'s contention that SRS did not use reasonable efforts to avoid removing the children from the home is without merit.
Finally, each parent argues the trial court's order terminating their parental rights is not supported by substantial competent evidence. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. Lansing-Delaware Water District v. Oak Lane Park, Inc., 248 Kan. 563, 572-73, 808 P.2d 1369 (1991). An appellate court must review the evidence in the light most favorable to the party prevailing below. In re S.M.Q., 247 Kan. 231, 234, 796 P.2d 543 (1990).
A threshold problem with the parents' claim of insufficient evidence is that the record on appeal is incomplete. The record on appeal does not include two volumes of testimony which were admitted by stipulation and which apparently included the testimony of eight witnesses. In addition, the record on appeal does not include any of the more than 40 exhibits which were admitted by the district court.
An appellant bears the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of error must fail. McCubbin v. Walker, 256 Kan. 276, 295, 886 P.2d 790 (1994). Because the record on appeal is incomplete, it is impossible for this court to conclude the record lacks sufficient evidence to support the district court's findings.
In any event, an examination of the record on appeal which has been provided shows there was substantial competent evidence to support the district court's order terminating the parents' rights.
P.J.J. testified in detail about her physical abuse of J.D.D. She stated the abuse began as early as October 1987, but admitted even earlier acts of abuse such as slamming a baby bottle into J.D.D.'s face and bruising or cutting his lip. She described whipping J.D.D. with a belt and leaving bruises on his bottom. She described beating him with a curtain rod, causing bruises "from the shoulders down on the front and back." She recounted an incident when she *875 held J.D.D.'s head under water, an incident which required that J.D.D. be taken to the emergency room. In short, P.J.J.'s abuse of J.D.D. began when the child was a few weeks old and intensified as he grew older.
The record also contains the testimony from counselors who worked with the children and opined that the children should not be returned to P.J.J. Finally, the record shows repeated unsuccessful efforts by SRS to return the children to P.J.J. and to provide P.J.J. with supportive services.
P.J.J. contends the district court ignored evidence that she had made some progress in her ability to control her anger and that in spite of the physical abuse, J.D.D. could remember some happy times at home. This contention is no more than an invitation to reevaluate the evidence in a manner different than the district court did. It is not the function of an appellate court to reweigh the evidence. McKissick v. Frye, 255 Kan. 566, Syl. ¶ 8, 876 P.2d 1371 (1994).
Viewed in the light most favorable to the prevailing party, the record on appeal contains substantial evidence that P.J.J. was unfit. The record supports the district court's findings that P.J.J. lacked the mental and emotional capacity to parent the children and that condition was unlikely to change in the foreseeable future. Although the evidence of physical abuse centered on J.D.D., the record contains ample evidence to support the termination of parental rights with respect to all three children.
With respect to D.D., the record on appeal shows that he knew of the early incidents when P.J.J. abused J.D.D. but has failed to protect J.D.D. from that abuse. D.D. saw J.D.D. for 1 hour in 1994, but could not remember how many times he saw the child in 1993. D.D. had signed a reintegration plan in 1992 which called for him to visit with J.D.D. at least once a month, but he admitted that he saw the child 15 times at most from 1990 to 1994. He admitted that his failure to visit J.D.D. was not because the visits were refused. He admitted that he was not adequately taking care of J.D.D.'s emotional needs.
D.D. argues that the district court failed to consider some mitigating factors that help explain his lack of contact with J.D.D. and *876 his failure to protect J.D.D. from abuse. This argument must fail. First, D.D.'s appellate brief relies on facts which are not cited to the record, in clear violation of Supreme Court Rule 6.02(d) (1995 Kan. Ct. R. Annot. 29). Any material statement made without citation to the record may be presumed to be without support in the record. Rule 6.02(d). Second, D.D. is asking this court to search the record to find evidence in his favor and then weigh that evidence against the evidence supporting termination of his parental rights. That is not the role of an appellate court. See McKissick, 255 Kan. 566, Syl. ¶ 8. Finally, even the incomplete record on appeal contains abundant evidence that D.D. has done almost nothing to maintain a relationship with J.D.D. and has utterly failed to make any adjustment in his own circumstances to meet the needs of J.D.D. The district court's finding that D.D. is unfit is supported by substantial competent evidence. The district court did not err in terminating the parental rights of D.D. to J.D.D.
The argument of L.J. that there was no substantial evidence to support the district court's termination of his parental rights is also without merit. He admitted that he learned about P.J.J.'s beating of J.D.D. with a curtain rod. In the face of ample evidence to the contrary (including an admission by P.J.J.), L.J told the court that P.J.J. had not abused any of the children since he married her in 1989. As noted by the district court, this admission shows L.J. is either unable to recognize or unwilling to admit the abuse by P.J.J. Also telling in this regard is L.J.'s testimony that he would step between P.J.J. and J.D.D. when her yelling would make the child "cower." In addition, L.J. has repeatedly left the children alone with P.J.J. and has failed to change his work schedule so that he could protect the children from abuse.
L.J. contends the district court failed to consider a viable alternative to terminating his parental rights to K.W.J. and K.J.J.: having him take on the primary parenting role. L.J. relies on the opinion of a therapist in 1991 that he would be an adequate parent if P.J.J. were not in the home. That opinion predates the birth of K.J.J. Even more troubling is the fact that SRS has already returned the children to the home twice, affording L.J. every opportunity to assume the "primary parenting role." He has failed to do so.
*877 In summary, a review of the record on appeal which is available shows there was substantial evidence to support the district court's conclusion that L.J. is unfit. The district court did not err in terminating L.J.'s parental rights.
Affirmed.