Frank E. CEASE, Plaintiff,

v.

SAFELITE GLASS CORP., Defendant.

Case No. 94–4113–SAC.

United States District Court,
D. Kansas.

May 10, 1996.

H. Reed Walker, Barnett Law Firm, Chartered, Kansas City, KS, Mark D. Wasserstrom, Kansas City, MO, for Frank E. Cease.

Karen R. Glickstein, W. James Foland, Shughart, Thomson & Kilroy, Kansas City, MO, for Safelite Glass Corp.

## MEMORANDUM AND ORDER

CROW, District Judge.

On November 15, 1995, the court entered a memorandum and order denying Safelite Glass Corporation's (Safelite) motion for summary judgment on Frank Cease's claim based upon Safelite's alleged violation of K.S.A. 50–149. *See Cease v. Safelite Glass Corp.*, 911 F.Supp. 477 (D.Kan.1995). The court, assuming, *arguendo*, that Kansas would recognize an implied private cause of action based upon K.S.A. 50–149, concluded that Cease had demonstrated, albeit narrowly, the existence of a genuine issue of material fact precluding summary judgment. However, the court instructed the parties to file additional briefs discussing the following issue:

> Would Kansas recognize an implied private cause of action based upon a violation of K.S.A. 50–149?

The parties have responded to the court's order, filing briefs in support of their respective positions.

The court, after careful consideration of the briefs of the parties and the applicable law, concludes that based upon the plain language of the statute, Kansas would not recognize a private cause of action based upon an alleged violation of K.S.A. 50–149. K.S.A. 50–149's origin is traced to 1905. In 1905 the legislature enacted Senate bill No. 377, which provided in part:

> Any person, firm, or corporation, foreign or domestic, doing business in the state of Kansas, and engaged in the production, manufacture or distribution of any commodity in general use, that shall intentionally, for the purpose of destroying competition, discriminate between different sections, communities or cities of this state, by selling such commodity at a lower rate in one section, community or city or any portion thereof than is charged for such commodity in another section, community, or city, after equalizing the distance form the point of production, manufacture or distribution and freight rates therefrom, shall be deemed guilty of unfair discrimination.

L.1905, ch. 2, § 1. *See* Kansas General Statutes §§ 5162–5165 (1909). The attorney-general was charged with prosecuting alleged violations of the statute in the name of the state of Kansas. *See* § 5165. In 1915, the legislature repealed §§ 5162–5165, and enacted House bill No. 200. That bill, titled "Discrimination and Unfair Trade Prohibited" is now found at K.S.A. 50–149 through K.S.A. 50–152. K.S.A. 50–149 provides:

> Any person, firm or corporation, foreign or domestic, doing business in the state of Kansas, and engaged in the production, manufacture, distribution, sale or purchase of any commodity in general use, that shall intentionally for the purpose of destroying competition, discriminate between the different sections, communities, or cities of

this state, by buying at a higher rate or selling at a lower rate, any such commodity, in one section, community or city, or any portion thereof, than is charged or paid for such commodity in other section, community, or city, after equalizing the distance from the point of production to the factory, for distribution, and freight rates therefrom, shall be deemed guilty of unfair discrimination.

K.S.A. 50–150 provides in pertinent part:

Any person violating any of the provisions of this act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed $5,000 or by imprisonment not exceeding one year, or by both such fine and imprisonment ... Violators of this act may also be enjoined or ousted from the continuing of such violations and such actions of this character may be commenced regardless of whether criminal proceedings have been instituted.

K.S.A. 50–151 provides in pertinent part:

All prosecutions and proceedings brought to enforce the provisions of this act or to punish violators of this act must be brought by the attorney general, or at his or her direction, or at the direction of the governor. The attorney general shall have power, and it is his or her duty to investigate all complaints charging that this act has been violated. . . .

Apparently only one reported case, *Sullivan v. Paramount Film Distributing Co.*, 164 Kan. 125, 187 P.2d 360 (1947), discusses K.S.A. 50–149. In *Sullivan*, a movie theater operator sued a film distributor, alleging, *inter alia*, violation of K.S.A. 50–149. The plaintiff basically alleged that the film distributor discriminated in the price it charged the plaintiff in an attempt to destroy competition. In full, the Supreme Court of Kansas's discussion of K.S.A. 50–149 states:

In this paragraph it is alleged that while defendant made demands upon plaintiff for permission to check the attendance in a particular way it did not make similar demands upon others who are not named. In the argument before the trial court counsel for plaintiff argued that this stated a violation of G.S.1935, 50–149. While the petition follows with much argument on that question, it is devoid of issuable facts.

164 Kan. at 130, 187 P.2d 360. The opinion does not otherwise discuss K.S.A. 50–149 and does not expressly decide whether Kansas would recognize a private cause of action for an alleged violation of K.S.A. 50–149.

The court has reviewed the appellate briefs filed by the parties in *Sullivan*.[1] The appellees' primary argument in regard to the appellant's claim premised upon violation of K.S.A. 50–149 was that the appellant's petition failed to allege sufficient facts to state a claim.[2] In its brief, the appellee did not argue that Kansas had not or would not recognize a private cause of action based upon K.S.A. 50–149. Presumably the Supreme Court, in disposing of the appeal, only considered the arguments raised by the parties. *See Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, 671, 809 P.2d 1216 (1991) ("The general rule is the failure to present an issue to the trial court precludes raising the issue on appeal."); *State v. Puckett*, 230 Kan. 596, 640 P.2d 1198 (1982) ("Although ordinarily an appellate court will not consider an issue which has not been raised in the trial court or which has not been raised by the parties on appeal, the court does have the power to do so in exceptional circumstances, where consideration of the new issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights."). The court notes that since *Sullivan* was decided in 1947, no other

---

1. The appellate briefs are available at the Kansas Supreme Court library.

2. In pertinent part, the appellee's brief states:

The plaintiff appears to have attempted to state a cause of action for discrimination in prices between him and distributors in other parts of the state. He uses some of the language of G.S.1935, 50–149 (A. 5), and he read the section to the court on argument of the

motion to strike. (A. 10) But there is no allegation that the defendants have demanded or even quoted to the plaintiff any price or rental higher than the rate charged to other distributors in other localities. No cause of action is stated on that theory.

Brief of Appellee in *Sullivan v. Paramount Film Distributing Corporation*, Case Nos. 36966 and 36967 at 27.

published case even contains a citation to the statute.

As stated in the court's November 15, 1995, memorandum and order, "[d]ecocted to its simplest form, the determination of whether or not a private cause of action should be inferred from a penal statute turns on the intent of legislature." 911 F.Supp. at 481 (citing *Greenlee v. Board of Clay County Comm'rs*, 241 Kan. 802, 805, 740 P.2d 606 (1987) (quoting *Harrod v. Latham Mercantile & Commercial Co.*, 77 Kan. 466, 470–71, 95 P. 11 (1908))).

■ The starting point for determining whether the legislature intended to create a private cause of action based in enacting K.S.A. 50–149 is the statute itself. See *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) ("The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'") (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. When a statute is plain and unambiguous, the court must give effect to the intent of the legislature as expressed rather than determine what the law should or should not be." *Tompkins v. Bise*, 259 Kan. 39, Syl. ¶ 1, 910 P.2d 185 (1996); *see State v. Riley*, 259 Kan. 774, 915 P.2d 774 (1996) ("The fundamental rule of statutory construction, to which all others are subordinate, is that the intent of the legislature governs if it can be ascertained."). "The legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results." *Tompkins*, 259 Kan. 39, Syl. ¶ 2, 910 P.2d 185.

It is elementary that if the meaning of a statute is plain, the sole function of the court is to enforce it according to its terms. Where a statute may be of doubtful meaning and is susceptible to two constructions, the court may look at the legislative history of the statute to assist in determining the meaning of the statute. If the legislative history does not assist the court as to which of the two constructions is correct, the court must select the reasonable construction so as to avoid unreasonable or absurd results. If the legislature disagrees with the court's interpretation of the statute, the legislature has the power to set aside the court's interpretation by amending the statute.

*Id.* at Syl. ¶ 3.[3]

■ "It is presumed the legislature understood the meaning of the words it used and intended to use them" and "that the legislature used the words in their ordinary and common meaning." *Bank of Kansas v. Davison*, 253 Kan. 780, 788, 861 P.2d 806 (1993) (quoting *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 8, 834 P.2d 368 (1992)). "Legislative intent must be determined from a general consideration of the entire act and not from an isolated part thereof." *In re J.D.D.*, 21 Kan.App.2d 871, 872, 908 P.2d 633 (1995) (citing *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992)).

■ Based upon the plain language of the statute and its enforcement provisions, it appears clear that the Kansas legislature did not intend to create a private cause of action when it enacted K.S.A. 50–149. The court is convinced that Kansas would not recognize a private cause of action based upon an alleged violation of K.S.A. 50–149. The authority to enforce the statute is specifically delegated to the attorney general or the governor: "All prosecutions and proceedings brought to enforce the provisions of this act or to punish violators of this act must be brought by the attorney general, or at his or her direction, or at the direction of the governor." This provision was apparently adopted so that other state actors could not institute a proceeding under this statute. There appears to be no logical construction of the statute to suggest from its plain language that the Kansas legislature impliedly created a private cause of action which might be instigated by any person deeming himself aggrieved. Nor

---

**3.** Nevertheless, the court attempted to locate any legislative history discussing the legislature's rea- sons for enacting the statute. That effort was fruitless.

is it clear that K.S.A. 50–149 was adopted for any other purpose than to protect the welfare of the public as an entity. *See Greenlee*, 241 Kan. at 804, 740 P.2d 606 ("The generally recognized rule is that a statute which does not purport to establish a civil liability but merely makes provision to secure the safety or welfare of the public as an entity is not subject to construction establishing a civil liability."); *Creative Profits of Madison, Ltd. v. Berman*, Case No. 159–311, 1978 WL 15577 (Wis.Cir. Dec. 7, 1978) ("Again, it is not clear that the plaintiff is in the class of persons intended to be protected by the statute. Sec. 133.185, Stats., would seem to emphasize the welfare of the defendants' various customers who are allegedly suffering price discrimination at the defendants' hands. The statutes does (sic) not seem intended to protect competitors of those engaging in price discrimination.").

The court's conclusion that Kansas would not recognize a private cause of action based upon violation of K.S.A. 50–149 is buttressed by comparison of that statute to other statutes enacted by the Kansas legislature, now found in Chapter 50 which is titled "Unfair Trade and Consumer Protection." For example, K.S.A. 50–136, adopted in 1887, makes it unlawful to price fix or to enter pooling agreements in regard to grain, hogs, cattle or stock of any kind or nature. The legislature not only made violation of K.S.A. 50–136 a criminal act subject to criminal penalties, *see* K.S.A. 50–138, but also specifically created a right of recovery for persons injured by any violation of the statute. *See* K.S.A. 50–137. Similarly, K.S.A. 50–108[4] (creating civil cause of action for violation of K.S.A. 50–101 and K.S.A. 50–102) and K.S.A. 50–115[5] (creating civil cause of action for violation of K.S.A. 50–112 and K.S.A. 50–113) each specifically create a private cause of action for violation of criminal statutes. In short, if the Kansas legislature wanted to create a private cause of action for violation of K.S.A. 50–149, it knew how to do so.

Cease suggests that the public interest is better served by permitting persons such as himself to bring suit against alleged violators of K.S.A. 50–149. *See Ed Phillips & Sons Madison, Inc. v. Ed Phillips & Sons Co.,*

*Inc.*, 1975 WL 15493 (Wis.Cir. Jan. 2, 1975) ("The court is of the opinion that the legislative purpose would be better carried out by permitting civil actions in behalf of fair and honest competitors who have been harmed by a violation of sec. 133.17 Stats., than by confining enforcement to criminal prosecution alone. The court, therefore, concludes that civil actions are maintainable to enforce this statute."). Although creating a private cause of action could potentially increase the enforcement of K.S.A. 50–149, such a policy decision is one for the Kansas legislature, and not this court, to make.

IT IS THEREFORE ORDERED that the court sua sponte reconsiders Safelite's motion for summary judgment (Dk. 60), and grants the motion.

---

**4.** Adopted by the Kansas legislature in 1897.

**5.** Adopted by the Kansas legislature in 1889.