No. 66,965

RON TODD, Insurance Commissioner of the State of Kansas, *Petitioner,* v. PATRICK F. KELLY, Judge of the United States District Court for the District of Kansas, *Respondent.*

DARCY M. AVES, *et al., Plaintiffs/Appellees,* v. NASREEN B. SHAH, M.D., *Defendant/Appellee.*

RON TODD, Commissioner of Insurance of the State of Kansas, *Appellant.*

(837 P.2d 381)

Opinion filed July 10, 1992.

*Steven C. Day,* of Woodard, Blaylock, Hernandez, Pilgreen & Roth, of Wichita, argued the cause and was on the briefs for appellant.

*Randall E. Fisher* and *Donald A. McKinney,* of Michaud, Hutton & Bradshaw, of Wichita, argued the cause, and *Arden J. Bradshaw,* of the same firm, and *Richard I. Stephenson,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, were with them on the brief for appellees Darcy M. Aves, *et al.,* and Nasreen B. Shah, M.D.

*Curtis J. Waugh, David E. Bruns,* and *Wayne T. Stratton,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, were on the brief for *amici curiae,* Kansas Hospital Association and Kansas Medical Society.

The opinion of the court was delivered by

HOLMES, C.J.: This case is before the court on a question certified by the United States Court of Appeals for the Tenth Circuit pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.*

The specific question certified to this court reads:

"1. In view of the limited liability of the Health Care Stabilization Fund, Kan. Stat. Ann. § 40-3401 *et seq.,* as set forth in section 3403(e), is the Insurance Commissioner of the State of Kansas, as a condition for obtaining a stay of execution of the judgment pending appeal, required to execute a bond in the full amount of a judgment as authorized by Kan. Stat. Ann. § 40-3422, even if the judgment exceeds the maximum liability of the fund—

(a) as a condition for stay of execution of the judgment against the health care provider, and/or

(b) as a condition for stay of execution of judgment by way of a proper claim made against the Fund?

"2. To facilitate disposition of question 1, should this court continue beyond its current expiration date the stay we now have in effect which is scheduled automatically to expire on September 16, 1991?"

On September 6, 1991, we responded to paragraph 2 of the certified question, recommending that the stay orders previously issued by the Tenth Circuit Court of Appeals be continued until final disposition of the principal question. It is our understanding that the certifying court has continued its stay orders in effect and nothing further is required of us in connection with paragraph 2.

In its order of certification, the circuit court stated the facts as follows:

"Following a jury trial in United States District Court for the District of Kansas, judgment was entered for plaintiffs and against a defendant health

care provider, as defined by Kan. Stat. Ann. § 40-3401 *et seq.*, in the amount of $21,244,824.90 with interest, and for costs. Defendant's post-judgment motions were denied. [Citation omitted.] On that same date, the court also stayed execution of the judgment pending a ruling on conditions for a stay pending appeal.

"At the direction of the Insurance Commissioner of the State of Kansas, acting in his capacity as administrator of the Health Care Stabilization Fund, as well as the named defendant, a notice of appeal to this court was filed and is presently pending as our No. 91-3206.

"Plaintiffs then moved in district court for an order directing the State of Kansas as insurers of the defendant doctor to file a supersedeas bond in the full amount of the judgment against the defendant health care provider, pursuant to Kan. Stat. Ann. § 40-3422, plus twenty-five percent of that amount to cover interest and delay, pursuant to Dist. Ct. R. 221. Following a hearing at which counsel for the Fund entered a limited appearance for the purposes of objecting to the bond requirement, the district court entered an order directing the administrator to comply with the terms of Kan. Stat. Ann. § 40-3422, and specifically to file a bond in the full amount of the judgment. (This order was subsequently amended to allow more time for compliance.)

"The Commissioner filed a motion for stay pending appeal (or to authorize the taking of an interlocutory appeal), which was denied by the district court.

"The Commissioner then filed a petition for writ of mandamus with this court, which is our No. 91-3215. Petitioner [Commissioner] also sought a stay of the district court's orders directing the Commissioner to file the bond. We granted the stay, temporarily, pending further order of this court. By our order issued simultaneously with this certification question, the temporary stay will expire automatically on September 16, 1991, unless the Kansas Supreme Court indicates its desire that we continue the stay beyond that date.

"The statutes with which we are concerned are Kan. Stat. Ann. § 40-3403(e) ([1991] Supp.), which reads:

"(e) In no event shall the fund be liable to pay in excess of $3,000,000 pursuant to any one judgment or settlement against any one health care provider relating to any injury or death arising out of the rendering of or the failure to render professional services on and after July 1, 1984, and before July 1, 1989, subject to an aggregate limitation for all judgments or settlements arising from all claims made in any one fiscal year in the amount of $6,000,000 for each provider,

and Kan. Stat. Ann. § 40-3422 (1986), which reads:

"In any medical malpractice liability action, as defined by K.S.A. 1985 Supp. 60-3401 and amendments thereto, the proceedings shall be stayed on appeal by the filing of a supersedeas bond in the full amount of the judgment against the health care provider signed by the commissioner of

insurance as administrator of the health care stabilization fund without surety or other security.

"The federal district court held that the requirement for posting a bond in the full amount of the judgment was clear, unambiguous, and mandatory, notwithstanding the provisions of section 40-3403(e) setting the maximum liability of the Fund at $3,000,000.

"We thus respectfully request the Kansas Supreme Court to address the questions herein presented. A decision by the Kansas Supreme Court on our certified questions is expected to govern the ultimate disposition of this original proceeding."

Judge Kelly of the federal district court found K.S.A. 40-3422 to be clear and unambiguous with no need for construction of the statute or consideration of any other statutes, in particular K.S.A. 1991 Supp. 40-3403(e). The court entered an order requiring the Commissioner to execute an appeal bond in the full amount of the judgment.

Due to the number of cases pending in the Tenth Circuit Court of Appeals, the alignment of the parties is somewhat unusual. Ron Todd, the Commissioner of Insurance of the State of Kansas, will be referred to throughout this opinion as Commissioner Todd or the Commissioner. The original plaintiffs in the federal district court, Darcy M. Aves, *et al.,* and the original defendant, Nasreen B. Shah, M.D., are now aligned in interest before this court, have filed a joint brief, and will be referred to collectively as appellees.

Before turning to the specific statutes which are the subject of the certified question, we pause to iterate certain basic rules of statutory construction:

Interpretation of statutes is a question of law. The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature. *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 719, 792 P.2d 971 (1990).

"As a general rule, statutes are construed to avoid unreasonable results. *Wells v. Anderson,* 8 Kan. App. 2d 431, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983). There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *In re Adoption of Baby Boy L.,* 231 Kan. 199, Syl. ¶ 7, 643 P.2d 168 (1982)." *City of Olathe v. Board of Zoning Appeals,* 10 Kan. App. 2d 218, 221, 696 P.2d 409 (1985).

"A construction of a statute should be avoided which would render the application of a statute impracticable or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act." *In re Adoption of Baby Boy L.,* 231

Kan. 199, Syl. ¶ 8, 643 P.2d 168 (1982). See 73 Am. Jur. 2d, Statutes § 251.

"In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *In re Marriage of Ross,* 245 Kan. 591, 594, 783 P.2d 331 (1989).

"[T]he court must give effect to the legislature's intent even though words, phrases or clauses at some place in the statute must be omitted or inserted." *Ross,* 245 Kan. at 594.

"In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law."* *Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975). (Emphasis added.)

We now turn to the issue raised by the certified question. We agree with the trial judge that K.S.A. 40-3422, when read in isolation, is clear and unambiguous and appears to require a supersedeas bond in the full amount of the judgment. However, as the foregoing rules and authorities clearly demonstrate, such a simplistic and narrow reading of the statute is not available to us. K.S.A. 40-3422 may not be read in isolation but may only be considered in connection with the other provisions of the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 *et seq.* (the Act).

K.S.A. 40-3422 is one small part of the Act first enacted by the legislature in 1976. The Act has been amended and supplemented at nearly every session of the legislature since 1976 and is a comprehensive attempt by the legislature to address problems faced by Kansas health care providers and the public in the areas of medical malpractice insurance. Commissioner Todd, in his brief before this court, accurately summarizes the history and rationale for the adoption of the Act.

"The Act arose out of circumstances beginning in the early 1970s, during which insurers, who had previously underwritten medical malpractice insurance policies, abandoned the market in response to increasing claims and decreasing profits. As a result, health care providers found it increasingly

difficult to obtain malpractice insurance. *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 335, 757 P.2d 251 (1988). With the adoption of the Health Care Provider Insurance Availability Act, all Kansas doctors were guaranteed the availability of malpractice insurance. Unfortunately, the crisis of medical malpractice insurance affordability continued, and intensified. See *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. at 337. See also *Bair v. Peck,* 248 Kan. 824, 828, 811 P.2d 1176 (1991). This affordability crisis was aggravated by the financial woes of the Health Care Stabilization Fund, which necessitated a substantial increase in the Fund surcharge which is assessed against Kansas health care providers. See *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. at 336.

"In response, the Kansas Legislature adopted a number of amendments to the Act during the 1984, 1985, and 1986 legislative sessions. Among these reforms were amendments to K.S.A. 1990 Supp. 40-3404, which were designed to place the Fund on an actuarially sound basis. Steps were also taken to reduce the Fund's 'limits' of liability, in an attempt to make coverage more affordable. Originally the Act had provided for unlimited liability by the Fund. This unlimited exposure made coverage too expensive, and also made it difficult to determine the appropriate Fund surcharge, based upon proper actuarial principles. Therefore, effective July 1, 1984, the legislature limited Fund liability to $3,000,000; in doing so, it was the clear intent of the legislature that Kansas physicians be assessed a Fund surcharge based upon a maximum exposure of $3,000,000."

In construing various sections of the Act, we have held that the entire act must be considered and that no one section should be read in isolation from the others, as the trial judge did in this case. For example, in *Bell v. Simon,* 246 Kan. 473, 790 P.2d 925 (1990), the Insurance Commissioner was contending, *inter alia,* there was no coverage by the Fund for Dr. Bazzano, a Missouri resident licensed to practice in Kansas, because of his failure to pay the required surcharge. The Commissioner sought a literal construction and application of K.S.A. 40-3403(c), arguing that the Fund had no liability if there was any violation of the Act. The court found that a rigid construction of the statute would be unreasonable and contrary to the overall objectives and purposes of the entire Act. In doing so, the court stated:

"K.S.A. 40-3403(c) must be read in harmony with the entire Act. While the legislature imposed more duties on the nonresident provider, nothing indicates the legislature envisioned less protection in the form of coverage or Fund liability when basic coverage continued by operation of law. While it may be true that Dr. Bazzano owes the Fund a surcharge for the period from April 1, 1986, through July 1987, the basic coverage continued by operation of law during this period, and we hold the excess liability coverage

of the Fund also continued. To hold otherwise, by a narrow isolated construction of K.S.A. 40-3403(c), would negate the public policy behind the Act as to patients of nonresident providers even though there had been substantial compliance with the act." 246 Kan. at 484.

When the two statutes now under consideration are read together, the conflict recognized by the Tenth Circuit Court of Appeals is obvious. K.S.A. 1991 Supp. 40-3403(e) clearly states, "In no event shall the fund be liable to pay in excess of $3,000,000 pursuant to any one judgment or settlement against any one health care provider." K.S.A. 40-3422, on the other hand, states, "[T]he proceedings shall be stayed on appeal by the filing of a supersedeas bond in the full amount of the judgment." Obviously the two statutes cannot both be literally applied when, as here, the judgment exceeds the statutory liability of the Fund. Therefore, we must determine, as best we can, the legislative intent of the two statutes when read in context with the entire Act.

As previously indicated, Judge Kelly entered an order requiring the Commissioner to execute an appeal bond in the full amount of the judgment. Judge Kelly apparently interprets K.S.A. 40-3422 to require the Commissioner to execute an appeal bond in the full amount of the judgment any time a medical malpractice case involving the Fund is appealed.

Appellees argue that Judge Kelly's interpretation of the mandatory nature of K.S.A. 40-3422 is correct. They claim that K.S.A. 40-3422 creates an unlimited duty on the part of the Commissioner to execute a bond in the full amount of the $21,244,824.90 judgment. The Commissioner and *amici* contend that the district court's and appellees' interpretation is based upon an isolated reading of K.S.A. 40-3422 and that the Act when read in its entirety and considered as a whole does not require posting a bond in excess of the amount for which the Fund is potentially liable. Alternatively, they contend that Kansas civil procedure does not require that a medical malpractice judgment debtor seeking a stay pending appeal rely solely upon K.S.A. 40-3422. They maintain that K.S.A. 40-3422 merely provides an optional method to stay proceedings in addition to K.S.A. 1991 Supp. 60-2103(d) and K.S.A. 60-262(e). Specifically, the Commissioner contends that, pursuant to K.S.A. 60-262(e), no bond is necessary to effect a stay. In view of the narrowness of the certified question,

we do not deem it necessary to consider the relationship of those statutes to the ones now before the court.

House Bill No. 2661 (H.B. 2661) includes K.S.A. 40-3422 and contains 53 sections covering 43 pages of the 1986 session laws, and, in addition to the new sections contained therein, amends and repeals 24 statutes. (L. 1986, ch. 229). K.S.A. 40-3422, one of the new sections, covers less than seven printed lines of this extensive legislative enactment. (L. 1986, ch. 229, § 31).

By 1985, even after several amendments since enactment of the original Act in 1976, the legislature was still concerned about what has come to be known as the "medical malpractice insurance crisis." In 1985 the legislature directed an interim study of the continuing "crisis." For a history and background of events leading to the passage of H.B. 2661 see *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 335-37, 757 P.2d 251 (1988), and Comment, *Caps, "Crisis," and Constitutionality—Evaluating the 1986 Kansas Medical Malpractice Legislation,* 35 Kan. L. Rev. 763 (1987).

During the 1985 legislative interim study the committee received voluminous reports and testimony on various facets of the study which eventually led to enactment of H.B. 2661. Unfortunately, discussion of section 31, now K.S.A. 40-3422, is virtually nonexistent and the few lines in the legislative record pertaining to it shed no light on what the legislature sought to accomplish by enacting K.S.A. 40-3422. Thus, we are faced with the duty of reconciling two inconsistent statutes which are part of the comprehensive Act pertaining to medical malpractice insurance.

A review of the history of the original Act, and its numerous amendments and additions, makes it abundantly clear that the legislature intended to place maximum limits on the liability of the Fund. The unlimited liability of the Fund established in the original Act of 1976 proved disastrous and resulted in insolvency of the Fund by the early 1980's. In 1984 the liability of the Fund was limited to $3,000,000 with the passage of 40-3403(e).

There are numerous considerations and arguments which convince us that it was never the intention of the legislature to impose unlimited liability on the Fund by the enactment of K.S.A. 40-3422. When the entire Act is considered in relation to the conflict between 40-3403(e) and 40-3422, it is clear that K.S.A. 40-3422

cannot be construed to require the Fund to post an appeal bond in excess of its maximum liability under 40-3403(e).

As pointed out earlier, the legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results. *State v. Roudybush*, 235 Kan. 834, 846, 686 P.2d 100 (1984); *Williams v. Board of Education*, 198 Kan. 115, 125, 422 P.2d 874 (1967).

Commissioner Todd argues that the isolated reading of K.S.A. 40-3422 proposed by appellees would mean that physicians in Kansas would have only limited coverage from the Fund for cases settled before trial, but, if not settled, essentially unlimited coverage created by the mere expedient of filing a notice of appeal.

The Commissioner, in his reply brief, asserts that the public policy implication would be to discourage settlements in catastrophic cases. "Rather than settle, plaintiffs will go to trial, and obtain large verdicts. They will then encourage the defendant to file an appeal, so as to force the Insurance Commissioner to execute a bond in the full amount of this judgment." The health care provider would then be relieved of any liability for the judgment even though the judgment exceeded the Fund's statutory limits. Appellees do not refute the Commissioner's reasoning, and it is inconceivable to us that this anomalous result would have been intended by the legislature.

The Commissioner also points out that, following the insolvency of the Fund, 40-3403(e) was enacted to restore the solvency and integrity of the Fund. To accomplish that goal, the statutory limits of liability were utilized along with the requirement that the amount of the surcharge be established on an actuarially sound basis. K.S.A. 1991 Supp. 40-3404(c). A literal reading of K.S.A. 40-3422 creating unlimited liability for the Fund could lead to the disastrous situation of insolvency again, make an actuarially sound basis for determining the amount of the surcharge impossible, and completely defeat the purposes of the Act by making the surcharge prohibitively expensive. On the other hand, reasonable limitations on the Fund's liability result in not only an affordable surcharge but also should result in more reasonable premiums from commercial carriers for excess coverage over and above the Fund liability.

Appellees argue in their brief that K.S.A. 40-3422 imparts upon the Commissioner the role of bondsman, and with that role the contractual duty to pay according to the terms of the bond. This duty, they contend, is separate and apart from the Commissioner's statutory duty to pay on judgments or settlements pursuant to the limits of the Fund. Although appellees attempted to retreat from that position in oral argument before this court, they assert in their brief that "K.S.A. 40-3422 provides additional protection to physicians, *independent of the insurance scheme [and that as] a separate and distinct provision* dealing with contractual liability of the Commissioner, the bond statute is not controlled by language which limits payments by the Fund for tort judgments or settlements." (Emphasis added.) Appellees conclude that "[a] bondsman has no liability on the underlying judgment and does not pay pursuant to such liability, but pays according to the terms of the bond." However, nothing in the language of the Act suggests that K.S.A. 40-3422 creates a separate duty of bondsman on the part of the Commissioner, or that K.S.A. 40-3422 is to be interpreted independently from the overall insurance scheme established by the Act. Notwithstanding the appellees' present attempt to downplay their arguments about payment of the entire judgment by the Fund and the separate contractual liability established by the posting of a bond, the ultimate goal and interest of the appellees in seeking such a bond is obvious. They hope to establish unlimited liability of the Fund and insure a guaranteed source of payment.

Appellees also argue that we should not be concerned with the ultimate results of our decision or be concerned with who has to ultimately pay the judgment and that we are limited to a simple construction of the clear language of the statute.

"In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act." *In re Marriage of Ross,* 245 Kan. 591, 594, 783 P.2d 331 (1989).

While the parties make numerous arguments in favor of their respective positions, we do not deem it necessary to consider each one individually.

The question of the amount of the appeal bond required when a judgment exceeds the limits of liability under an insurance policy has previously been addressed by this court in the private insurance context. In *Cansler v. Harrington*, 231 Kan. 66, 643 P.2d 110 (1982), this court was asked to determine an insurer's liability, pending appeal, when it refused to post a supersedeas bond for an amount in excess of its policy limits. The trial court set the supersedeas bond at $25,000, the amount of the judgment. The liability limit of the insurance policy was $15,000. This presented a dilemma to the insurance company. Had it posted the bond, it would have been placing an additional $10,000 at risk, dependent on the outcome of the appeal. Because the insured was unable to post bond, the plaintiff initiated garnishment proceedings to collect the policy limits from the defendant's insurer.

In *Cansler*, although the insurer had, by the time the case reached this court, obtained a stay of execution pending its appeal, the court nevertheless addressed the issue because it was "a problem of sufficient magnitude to justify court clarification." *Cansler*, 231 Kan. at 71. This court, in weighing the policy implications involved, stated:

"It is inequitable to require an insurance company to post a $25,000 supersedeas bond to stay a garnishment when its policy limits are only $15,000. . . . On the other hand, it has now been two years since the jury awarded appellee $25,000 and she has been the victim of a procedural circus. Let us proceed to establish a procedure with safeguards for judgment creditors which also provides an equitable appellate stay procedure for judgment debtors." 231 Kan. at 71.

The court then acknowledged the "dilemma" facing insurers when caught between the "clear and unambiguous language" of K.S.A. 60-2103(d), which required a bond "conditioned for the satisfaction of the judgment in full," and an adverse verdict which exceeds policy limits. After finding that the garnishment action was not premature, the court then set forth an equitable solution to the problem:

"[A]ppellant seeks only to stay the garnishment action against it to the extent of its liability under its policy of $15,000. It does not attempt to stay appellee's action against the appellant Bartoski. Thus, we hold the garnishee may stay a garnishment action against it by posting a supersedeas bond in the amount of its liability plus costs and interest." 231 Kan. at 73.

The holding in *Cansler* was cited with approval and applied by Judge Theis in *Bergeson v. Dilworth*, 749 F. Supp. 1555 (D. Kan. 1990). There, plaintiff brought a garnishment action against defendant's insurer in an attempt to satisfy a judgment that exceeded the defendant's policy limits. Although coverage under defendant's automobile liability policy was $200,000, plaintiff was awarded actual and punitive damages totalling $756,795.33. The defendant did not post a supersedeas bond to stay execution pending the appeal of the underlying action. The insurer then moved the court to stay garnishment proceedings pending appeal upon the posting of an appeal bond in the $200,000 amount of its coverage under defendant's policy. The court stated:

"Although this district normally requires a supersedeas bond of 125% of the judgment, D. Kan. Rule 221, State Farm relies on Kansas Supreme Court authority holding that a bond in the amount of the insurer's coverage of a defendant's liability should suffice to stay enforcement of the judgment. *Cansler v. Harrington*, 231 Kan. 66, 643 P.2d 110 (1982). In *Cansler*, the court held that an insurer seeking to stay garnishment proceedings against it need only post a supersedeas bond in the amount of its policy, even if the judgment against its insured exceeds the policy limits. *Id.* at 73, 643 P.2d at 115.

"Plaintiff opposes garnishee's attempt to stay garnishment by posting only the amount of its policy coverage. . . . [ Kan. Rule 221 provides:]

" 'A supersedeas bond staying execution of a money judgment shall, unless the court otherwise directs, be in the amount of the judgment, plus 25% of that amount to cover interest and any award of damages for delay.'

"The court . . . believes that the rule of *Cansler* is supported by sound policy considerations. If State Farm were required to post a full supersedeas bond prior to any finding of liability for an amount in excess of the policy, State Farm would place at risk an amount that it has no obligation to pay at this point. Thus, even assuming that *Cansler* is not controlling on this court, its rule will be adopted under the discretionary authority of D. Kan. Rule 221. At this time, State Farm may stay the garnishment action against it for the amount of its policy coverage by posting $200,000 plus 25% to cover costs and interest." 749 F. Supp. at 1558.

The issue has also been addressed in *Rosato v. Penton*, 182 N.J. Super. 493, 442 A.2d 656 (1981). There, plaintiff Sylvia Rosato obtained a $38,000 judgment against defendant Jose Penton for injuries suffered in an automobile accident. Defendant's liability policy provided coverage of only $15,000. Allstate Insurance Company, defendant's carrier, filed an appeal on his

behalf and thereafter a motion seeking permission to submit a supersedeas bond guaranteeing only that portion of the judgment for which it ultimately could be found liable. In finding that the insurance company was required to file a bond only in the amount of its liability, the court stated:

> "The parties to the action contend that the [insurance] company should be required to post a full bond. This appears to be a matter of first impression in New Jersey.
>
> "R. 2:9-6(a) provides in pertinent part: 'Unless the court otherwise orders after notice on good cause shown, the [supersedeas] bond shall be conditioned for the satisfaction of the judgment in full, together with interest and trial costs, and to satisfy fully such modification of judgment, additional interest and costs and damages as the appellate court may adjudge.'
>
> . . . .
>
> "In *Merritt v. J.A. Stafford Co.*, 68 Cal. 2d 619, 440 P.2d 927, 68 Cal. Rptr. 447 (Sup. Ct. 1968), the court recognized that when a judgment exceeds liability insurance limits, the plaintiff, the insured, and the insurer have differing interests worthy of protection:
>
>> 'Failure of the insurer to file any bond may result in the insured losing large amounts of property due to execution sales during the appeal and thus losing in large part, if not entirely, the benefits of the insurance. On the other hand, the insurer cannot be required to post a bond for the entire judgment when its liability does not extend to the entire judgment. Fairness to the insurer and the insured requires that the insurer be permitted to fulfill its covenant of good faith and fair dealing by filing an appeal bond in an amount sufficient to cover the part of the judgment for which it is liable and that the respondent be denied his right to seek execution with regard to such part of the judgment. Such a rule does no harm to the respondent. As to the excess part of the judgment he may seek execution . . . . at 440 P.2d at 931-32, 68 Cal. Rptr. 451.'

There does not appear to be any contrary authority, and the California rule has been supported in at least two other jurisdictions. *Fitzgerald v. Addison*, 287 So. 2d 151 (Fla. App. 1973); *Rudolph v. Cassidy*, 225 Ark. 951, 286 S.W.2d 489 (Sup. Ct. 1956)." 182 N.J. Super. at 495-96.

*Rosato* concluded that defendant's insurance company could file a supersedeas bond guaranteeing payment of its $15,000 policy limits, interest on that amount, and costs even though the statute required a bond for "satisfaction of the judgment in full."

It should be noted that K.S.A. 60-2103(d), considered by the court in *Cansler,* provided in part:

*"The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay,* if for any reason the appeal is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment such costs, interest, and damages as the appellate court may adjudge and award. *When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay,* unless the court after notice and hearing and for good cause shown fixes a different amount or orders security other than the bond." (Emphasis added.)

There were similar requirements in the rules and statutes in the other cases cited above. In the present case, as in *Cansler,* we must determine the amount of the bond required of the Fund when the statute uses language referring to the full amount of the judgment similar to that in 60-2103(d).

Although the Fund is not a private insurance company, we have repeatedly recognized that the entire scheme of the Act and the liability of the Fund are based upon the concept of commercial liability insurance. For example, in *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 336, 757 P.2d 251 (1988), we described the Fund as "a state-run insurance company designed to provide additional insurance coverage above the primary coverage limits to all health care providers." Later in the same opinion the court stated, "Because the Fund is a state-run insurance company, the State is free to limit its liability in any amount it wishes." 243 Kan. at 339. Thus, the analysis in *Cansler* and the other decisions cited above is persuasive and directly applicable to the question now before us. K.S.A. 1991 Supp. 40-3403(e) established the limits of the liability of the Fund just as an insurance policy establishes the limits of liability of a commercial insurance company. K.S.A. 40-3422 must be read and applied in light of the "policy limits" of the Fund established by 40-3403(e).

In reaching our conclusions in this case, we note that in the interpretation and application of statutes requiring appeal bonds, the courts are generally given exceptional leeway. 4A C.J.S., Appeal & Error § 502a, p. 208, states: "In construing statutes requiring appeal bonds or undertakings, the courts are not bound

to a strict and literal interpretation, but will construe them so as to effectuate the intention of the legislature instead of nullifying it." We also note that if it had been the intention of the legislature that K.S.A. 40-3422 require a bond in excess of the statutory limitations on the liability of the Fund, it would have been a simple matter to have said so in the statute. The statute in question does not contain any language that would indicate an intent that a bond in the full amount is required regardless of the provisions of 40-3403(e) or other sections of the Act. Under the circumstances we are left, as we were in *Cansler*, with the duty of establishing an equitable procedure when faced with conflicting statutes and interests.

We conclude the Commissioner, on behalf of the Fund, is not required to execute an appeal bond in excess of the Fund's statutorily limited liability of $3,000,000 plus interest and costs and that any bond to stay execution of any amounts over and above the Fund's liability must be provided by the health care provider.

The answer to the certified question is: (a) To stay execution against the health care provider, the Commissioner must provide a bond in the amount of its statutory liability of not more than $3,000,000 plus interest thereon and costs, and the health care provider must provide a bond for the excess of any judgment over $3,000,000 plus interest on the excess and costs, and (b) the bond of the Commissioner as described in (a) shall be sufficient to stay the enforcement of any claim against the Fund.