Richard Raleigh Barber County Attorney Box 248 Medicine Lodge, Kansas
Dear Mr. Raleigh:
As Barber County Attorney, you request our opinion regarding the procedure applicable to the recall of members of the board of education for Unified School District No. 254 (USD 254) when the member district boundaries have been changed since the last general election at which members of the board were elected. Specifically, you ask which electors may sign the petitions seeking recall of individual members of the board and how many signatures are required on the petitions.
The members of the board of education for USD 254 are elected pursuant to voting plan-C described in subsection (c) of K.S.A. 72-8003. Under the plan, six members of the board are elected to member positions numbered one through six. Electors residing in the correspondingly numbered member district are the only electors to vote in the primary and general elections for the member position. The remaining member of the board is an at-large member and is elected in the primary and general elections by all electors residing in USD 254.
Prior to January 1, 1997, the board of education for USD 254 changed the member district boundaries, apparently in an attempt to equalize the population among the member districts. While no board members have actually relocated their residences, as a result of the change in member district boundaries some board members no longer reside in the member district correspondingly numbered to the member position occupied by the board member. For example, board members serving in member position #2 and member position #3 now reside in territory comprising member district #5, and no board member presently resides in territory constituting member district #3. Because of a statutory provision included in K.S.A. 25-2022a, the members will continue to serve as members of the board of education until expiration of the terms of office for which they were elected.
Electors of USD 254 have proposed the recall of three members of the board of education. The members sought to be recalled are those members serving in member position #2, member position #3 and the at-large member. Electors residing in member districts #4, #5 and #6 will be voting in the general election held in April, 1997, for new board members.
Recall of a member of a board of education is proposed by filing a petition with the county election officer of the home county of the school district. K.S.A. 25-4318. K.S.A. 25-4325 provides in part:
 "The recall committee may file the petition only if signed by registered electors in the election district of the local officer sought to be recalled equal in number to not less than 40% of the votes cast for all candidates for the office of the local officer sought to be recalled in the last general election at which a person was elected to such office. If more than one person was elected to such office at such election the number of signatures required shall be equal to not less than 40% of the votes cast at such election for all candidates for the office divided by the number of persons elected to such office."
In Attorney General Opinion No. 90-120, the procedure applicable to the recall of a member of a board of county commissioners was reviewed. Following the general election, the board of county commissioners reorganized the county commissioner districts. As a result of the redistricting, the district of the county commissioner who was the subject of a recall petition included territory which at the time of the last general election was included within the districts of the other two county commissioners. In determining which electors would have the authority to sign the recall petition, the opinion stated:
 "While the district boundaries have been altered, the district continues to exist. The form has changed from the time the county commissioner was elected. However, there is still a specific district which the elected official represents. Thus, it is our opinion that the election district referred to in [K.S.A.] 25-4320 and 25-4325 is the one which currently exists and which the local official in question now represents. To hold otherwise would allow recall of an elected official by individuals who now cannot vote to fill that official's position." Attorney General Opinion No. 90-120 (emphasis added).
The opinion then provided that the electors qualified to sign the recall petition were those electors residing in the district as it existed after the boundaries were altered. The number of signatures required on the recall petition was to be based on the total number of votes cast in the affected district during the last general election for county commissioner. In determining the total number of votes cast in the last general election, the county election officer was obligated to include in the count the total number of votes cast in each precinct constituting a part of the new county commissioner district served by the official sought to be recalled.
That portion of Attorney General Opinion No. 90-120 regarding which electors may sign the petition seeking recall of the county commissioner has application when determining which electors may sign the petitions seeking recall of the members of the board of education for USD 254. When a school district uses the six member district method of election, the school district is divided into six separate member districts. K.S.A.72-8009. Under voting plan-C, each member district will elect a person to serve in a member position having the same number as the member district. K.S.A. 25-2003; 72-8003. In order to be a candidate for or be appointed to a member position of a board of education, the candidate or appointee must be a resident of the member district represented by the member position. K.S.A.25-2020; 25-2022a; 72-8009. However, once elected or appointed to the board of education, the member is no longer required to reside within the member district represented by the member position.
 "Changes of member district territory and boundaries such that a member of a board of education no longer resides in the member district from which elected or appointed shall not shorten the term of such member. In the event a member of a board of education elected or appointed from a member district changes residence from one place to another within a school district, such that he or she no longer resides in the member district from which elected or appointed, such member shall nevertheless continue the term to its conclusion without such term being shortened. . . ." K.S.A. 25-2022a.
Therefore, a member of a board of education who, because member district boundaries were changed, no longer resides within the member district from which elected may continue to serve in the member position to which the member was elected. Each member district continues to be represented on the board of education by a person serving in the correspondingly numbered member position, i.e., if the member was elected from member district #1 and serves in member position #1, but due to redistricting actually resides in member district #2, the member will continue to serve in member position #1 until the end of the term of office for which the member was elected, representing member district #1.
In USD 254, a resident of member district #2 was elected to member position #2 and a resident of member district #3 was elected to member position #3. Due to redistricting, those persons serving in member position #2 and member position #3 now reside in territory comprising member district #5. We recognize that very little, if any, territory previously constituting former member district #2 and former member district #3 was included within the territory comprising those member districts after redistricting. However, because the terms of office for these members are not shortened by the redistricting, those board members continue to serve in member position #2 and member position #3, representing their correspondingly numbered member districts, until expiration of their terms of office. As the term is used in K.S.A. 25-4320 and 25-4325, "election district" refers to the member district as it exists after alteration of the member district boundaries and which the board of education member now represents. Attorney General Opinion No. 90-120. The members of the board of education for USD 254 who were elected to member position #2 and member position #3 represent member district #2 and member district #3 in their present configurations, despite the fact the members reside in member district #5. Those electors residing in the areas now constituting member district #2 and member district #3 are, therefore, qualified to sign the petitions seeking recall of their respective members of the board of education for USD 254.
Because statutes are not to be construed in such manner as to require the performance of a vain, idle, or futile thing, Todd v. Kelly, 251 Kan. 512, 515 (1992), that portion of Attorney General Opinion No. 90-120 regarding the number of signatures required on a petition is deemed to have limited application. In redistricting the county commissioner districts, the board of county commissioners was required to follow precinct lines. Andrews v. Board of County Commissioners,207 Kan. 548, 550 (1971); Attorney General Opinion No. 89-25. Because the county commissioner districts followed precinct lines, the county election officer was able to determine the number of votes cast in the district for county commissioner by including the vote totals of precincts added to the district and subtracting vote totals of precincts which were removed from the district. A unified school district altering its member districts is not obligated to follow precinct lines. It is our understanding that the member districts established in USD 254 do not follow precinct lines. Therefore, while the county election officer may determine the total number of qualified electors presently residing in each member district, the county election officer is not able to break down election results in a manner that would enable the county election officer to determine the number of electors residing in the district who actually voted for a particular member position on the board of education in the last general election at which a person was elected to such member position. Applying the conclusion expressed in Attorney General Opinion No. 90-120 regarding the manner in which the number of signatures should be determined to the situation at hand results in interpreting the statutes as requiring application of an impossible or unworkable procedure. As noted by the Court in Todd, such a construction of the statutes should be avoided.
K.S.A. 25-4325 requires that a petition seeking recall of a member of a board of education include signatures "equal in number to not less than 40% of the votes cast for all candidates for the office of the local officer sought to be recalled in the last general election at which a person was elected to such office." As noted above, school board members are elected to member positions. While initially the ability to be appointed or elected to a member position is dependent on residency within the member district represented by the member position, state statutes recognize that the member district represented by the member position may change. The statutes view member position as being somewhat independent of member district. The term "office of the local officer sought to be recalled" as used in K.S.A.25-4325 refers to the member position in which the member is serving. In applying the language of the provision to the situation existing in USD 254, the petition seeking recall of the board of education member serving in member position #2 must include signatures equal in number to not less than 40% of the votes cast for all candidates for member position #2 in the last general election in which a person was elected to member position #2, and the petition seeking recall of the board of education member serving in member position #3 must include signatures equal in number to not less than 40% of the votes cast for all candidates for member position #3 in the last general election in which a person was elected to member position #3.
The same or similar statutory provisions have been construed in Attorney General Opinions No. 77-309 and 75-13. The constructions suggested in those opinions, however, are inapplicable to the situation reviewed herein. The constructions suggested in Attorney General Opinion No. 77-309 would result in the county election officer making a best approximation of the number of signatures required. The procedure set forth in Attorney General Opinion No. 75-13 focuses on voter registration rather than voter participation, requiring the gathering of far more signatures. Because recall is a fundamental right guaranteed by section 3 of article 4
of the Kansas Constitution, statutes governing the exercise of the power are to be liberally construed in favor of the ability to exercise it, and any limitations on that power must be strictly construed. Unger v.Horn, 240 Kan. 740, 741 (1987); Baker v. Gibson,22 Kan. App. 2d 36, Syl. ¶¶ 1, 3 (1995); Cline v. Meis,21 Kan. App. 2d 622, Syl. ¶ 2 (1995). The procedure proposed in Attorney General Opinion No. 77-309 is too abstract to be applied in the exercise of a fundamental right, while the procedure set forth in Attorney General Opinion No. 75-13 is too onerous given the intent of the Legislature in establishing the procedure set forth in K.S.A. 25-4325. For these reasons, the procedures proposed in Attorney General Opinions No. 77-309 and 75-13 for determining the number of signatures required on petitions are rejected.
In summary, the member districts represented by members serving in member position #2 and member position #3 are member district #2 and member district #3, respectively, as those districts exist after alteration of the member district boundaries. Electors residing in member district #2 and in member district #3 are qualified to sign the petitions seeking recall of the member representing their member districts. The number of signatures required on the petitions must equal not less than 40% of the vote cast for all candidates for the member position served by the member sought to be recalled.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm