No. 76,073

THE LEGISLATIVE COORDINATING COUNCIL, *Petitioner*, v. THE HONORABLE SHEILA FRAHM, SECRETARY OF THE DEPARTMENT OF ADMINISTRATION, and SHIRLEY A. MOSES, DIRECTOR OF ACCOUNTS AND REPORTS, *Respondents*.

(936 P.2d 267)

Opinion filed April 18, 1997.

*Robert J. Nugent*, assistant revisor of statutes, argued the cause, and *Norman J. Furse*, revisor of statutes, and *Renae Jefferies*, assistant revisor of statutes, were with him on the briefs for petitioner.

*John W. Campbell*, senior deputy attorney general, argued the cause, and *Robert E. North*, staff attorney, Kansas Department of Administration, and *Carla J. Stovall*, attorney general, were with him on the brief for respondents.

The opinion of the court was delivered by

DAVIS, J.: The Legislative Coordinating Council (LCC) brought this original action in mandamus against respondents Sheila Frahm, Secretary of Department of Administration, and Shirley Moses, the Director of Accounts and Reports because Moses refused to pay LCC vouchers for court costs and attorney fees in-

curred in an election contest action. The director determined that the expenditures were unlawful. We do not reach the merits of the question and dismiss based upon our conclusion that the LCC had no authority or standing to bring this action.

The parties have submitted this case upon the following stipulated facts:

"1. On December 21, 1994, Joe Shriver was declared the winner of the election for 79th District State Representative over Danny Jones by then Kansas Secretary of State, Bill Graves.

"2. Jones filed suit contesting the elections and on January 6, 1995, the Cowley County District Court determined the election to be a tie vote and under K.S.A. 25-1452 waived the costs of the contest and held, in part:

'3. In the interests of justice, the costs of this contest are hereby waived and should therefore be paid by the State of Kansas in a special appropriation made therefore, pursuant to K.S.A. 25-1452. It is the specific recommendation of this court that the costs of this case include a reasonable sum for attorney fees for both the parties.'

"3. On January 30, 1995, Speaker Shallenburger appointed a select committee of six members of the Kansas House of Representatives to hear the matter and report to the full House pursuant to K.S.A. 25-1451(b).

"4. On February 9, 1995, the select committee reported to the membership of the House that the contested election had resulted in a tie vote between Jones and Shriver. The committee recommended that the outcome of the election should be decided by lot. The report of the select committee did not mention payment of court costs or attorneys' fees in this matter.

"5. On February 10, 1995, the Speaker announced that by mutual agreement of the candidates and concurrence of the leadership of the Republican and Democratic parties in the House, the election for the Office of Representative of the 79th District would be determined by drawing lots. The announcement, as stated in the Journal of the House, did not mention payment of court costs or attorneys' fees in this matter. Jones won the drawing and was seated.

"6. During the 1995 legislative session, both Senate Bill No. 95 and House Bill No. 2085 contained appropriations provisions for Legislative expenses. HB 2085 did not mention specifically payment of court costs or attorneys' fees in this matter. SB 95 was amended by motion of the House Minority Leader to specifically appropriate money to pay Jones' and Shriver's attorneys' fees. The day after SB 95 was so amended the full House adopted the conference committee report on HB 2085. HB 2085, which included appropriations for legislative operational costs, became law on July 1, 1995.

"7. On motion of Senator Bogina to non-concur to the House amendments to SB 95, a conference committee was appointed. Senators Bogina, Emert and Rock, as well as Representatives Jennison, Carmody and Helgerson met as the confer-

ence committee on SB 95. The conference committee agreed to disagree and SB 95 remained in conference committee during the 1995 legislative session.

"8. On May 30, 1995, Speaker Pro Tem Susan Wagle requested an Attorney General's Opinion asking whether either HB 2085 or its 1994 predecessor (1994 Kan. Sess. Laws Ch. 255) authorized the LCC to pay Jones' and Shriver's court costs and attorneys' fees. On June 30, [1995], the Attorney General opined: 'The costs incurred in the contest of an election in the seventy-ninth representative district may not be paid from appropriation set forth in L. 1994, ch. 255, § 3 or section 3 of 1995 house bill no. 2085.'

"9. On August 21, 1995, Speaker Shallenburger pointed out to the Council that because 1995 Senate Bill No. 95 was not passed by the Legislature, the court costs, transcription expenses and attorneys' fees in the contested election case of *Jones v. Shriver*, District Court of Cowley County, Kansas, had not been paid. Speaker Shallenburger moved that the court costs, transcription expenses and attorney fees as specified in 1995 Senate Bill No. 95, (as amended by House Committee of the Whole) be paid from the operations (including official hospitality) account of the Legislature. Representative Sawyer seconded the motion. In discussion, members of the Council considered the statute relating to payment of costs of contests of elections; that the district judge who heard the case ordered the costs of the election contest to be paid by the state and recommended that the costs of the case include a reasonable sum for attorney fees for both parties; an opinion of the Attorney General on the matter; the amount of the costs, including attorney fees, authorized for payment in 1995 Senate Bill No. 95 (as amended by House Committee of the Whole); and that 1995 Senate Bill No. 95 (as amended by House Committee of the Whole) authorized the payment of attorney fees in the matter from the operations (including official hospitality) account of the Legislature. The motion carried. Senator Moran voted against the motion.

"10. On August 24, 1995, the LCC submitted a payment voucher, V 428, to the Division of Accounts and Reports of the Department of Administration seeking payment of Danny Jones' attorney fees in *Jones v. Shriver* to the law firm of Patterson, Nelson, Nolla & Witteman, L.C. in the amount of $19,054.15.

"11. On August 24, 1995, the LCC submitted a payment voucher, V 427, to the Division of Accounts and Reports of the Department of Administration seeking payment of Danny Jones' attorney fees in *Jones v. Shriver* to Eric Rucker, Attorney at Law, in the amount of $5,624.75.

"12. On August 24, 1995, the LCC submitted a payment voucher, V 426, to the Division of Accounts and Reports of the Department of Administration seeking payment of Danny Jones' attorney fees in *Jones v. Shriver* to Dale Sprague, Attorney at Law, in the amount of $321.10.

"13. On August 24, 1995, the LCC submitted a payment voucher, V 424, to the Division of Accounts and Reports of the Department of Administration seeking payment of docket fee, witness fees and faxed copies in *Jones v. Shriver* to the District Court of Cowley County in the amount of $466.12.

"14. On August 24, 1995, the LCC submitted a payment voucher, V 425, to the Division of Accounts and Reports of the Department of Administration seeking payment of Joe Shriver's attorney fees in *Jones v. Shriver* to Victor Miller, Attorney at Law in the amount of $15,000.

"15. On August 24, 1995, the LCC submitted a payment voucher, V 423, to the Division of Accounts and Reports of the Department of Administration seeking payment of transcription costs and fax costs in *Jones v. Shriver* to Deanne M. Johnson, CSR, in the amount of $1,164.

"16. The Director of Accounts and Reports, upon receipt of the above mentioned vouchers, consulted with the Attorney General and afterwards refused to process the vouchers for payment.

"17. On October 18, 1995, the LCC convened and reviewed a letter to the Director of Accounts and Reports from the Attorney General reaffirming the opinion expressed in Attorney General Opinion 95-66. The Council then carried a motion of Representative Snowbarger, seconded by Representative Wagle, to again direct the Director of Accounts and Reports to pay the court costs and attorney fees in the contested election case. Only Senator Moran voted against the motion.

"18. October 20, 1995, Senator Burke, Chairperson of the LCC, sent a letter to Sheila Frahm, then Secretary of Administration, discussing the Council's views and conveying to the Secretary the motion adopted by the Council at its October 18, 1995, meeting.

"19. October 20, 1995, Respondent Moses wrote a letter to Emil Lutz, Director of Legislative Administrative Services, returning the vouchers unpaid, citing Kansas Attorney General Opinion 95-66 as the basis for denial of payment.

"20. During the November 16, 1995 LCC meeting, Representative Snowbarger inquired about the current status of the payment of court costs and attorney fees in the contested election case of *Jones v. Shriver*. Mr. Lutz indicated that the original vouchers were returned to him by the Department of Administration but, that based on the direction of the Legislative Coordinating Council at its October 18, 1995 meeting, he had again forwarded the vouchers to the Department of Administration, Division of Accounts and Reports. Mr. Lutz indicated that the vouchers had not been returned to him by the Department.

"21. Also during the November 16, 1995, LCC meeting, Representative Wagle inquired about the possibility of commencing a court action in mandamus to enforce the payment of the vouchers. Concerns were expressed that the time before the upcoming legislative session was not adequate to allow for a court action, since the matter could be resolved at the next legislative session. President Burke requested that a bill be prepared by the Revisor of Statutes Office which would address the issue of payment of court costs from money appropriated to the legislature in contested election cases which involve candidates for the state legislature.

"22. On December 29, 1995, the LCC pre-filed House Bill 2609, an amendment to K.S.A. 25-1452, which would provide, in part;

'The court, in the ~~interests~~ *interest* of justice may waive any costs assessed pursuant to this section in which case the costs shall be paid by the state from any appropriations therefor *or, in a case of the contest of a state legislative election, from appropriations available of expenses of the legislature.*'

"HB 2609 was introduced in the House on January 8, 1996 and referred to the House Committee on Governmental Organization and Elections where it remained for the duration of the session.

"23. On January 22, 1996, the LCC expressed concerns that the failure of Respondents to pay the vouchers 'raised serious questions of the constitutional separation of powers between the legislative and executive branch of government' and while the Legislature was in regular session directed the Revisor of Statutes to:

'. . . represent the Legislative Coordinating Council and the Legislature as legal counsel in this matter, to bring the appropriate court action to secure the payment of attorney fees and court and transcription costs in the contested election case of *Jones v. Shriver,* and the Revisor of Statutes was directed to file the appropriate court action in this matter as legal counsel and to prosecute the action to conclusion.'

"24. On January 30, 1996, Senate Bill No. 561 was introduced by the Senate Committee on Elections, Congressional and Legislative Apportionment and Governmental Standards. Under Senate Bill No. 561, K.S.A. 25-1452 would be amended to read, in part: 'The state shall not pay any costs nor pay any attorney fees of the contestant or contestee associated with any contest of election.'

"25. Senate Bill No. 561 passed the Senate by a vote of 34 to 5, but failed to be passed out of the House Committee on Governmental Organization and Elections, and was not enacted into law.

"26. On January 25, 1996, the House Committee on Appropriations introduced House Bill No. 2724, a major appropriations bill which includes reductions in fiscal year 1996 (FY 96) appropriations. In § 37 of House Bill No. 2724, *as amended* by both the House Appropriations Committee and the House Committee of the Whole, $40,000, the amount the LCC wants to pay Jones' and Shriver's attorneys, was removed from the FY 96 appropriation for legislative operations. House Bill No. 2724 was not enacted into law.

"27. In the 1996 regular legislative session, the Senate Ways and Means Committee introduced Senate Bill No. 426 on January 9, 1996. This bill also reduced the legislature's FY 96 operating budget. In committee action, $41,630.21 was removed from the legislature's FY 96 operating budget. Senate Bill No. 426 was not enacted into law."

The LCC is a creature of statute. Its authority and power to act on behalf of the legislature are clearly delineated by the legislature. Article 12, Chapter 46 of the Kansas Statutes Annotated deals with

the creation, powers, function, and authority of the LCC. K.S.A. 46-1201(a) establishes the LCC with seven members:

"Such members shall be the president of the senate, the speaker of the house of representatives, the speaker pro tem of the house of representatives, the majority leader of the senate, the majority leader of the house of representatives, the minority leader of the senate, and the minority leader of the house of representatives."

The threshold question we address involves the authority of the LCC to bring an action while the legislature is in session. It is undisputed that the petition for writ of mandamus filed by the Revisor of Statutes on behalf of the LCC was filed during the legislative session. The question, a legal one, is whether the LCC by statute has standing and authority to bring this action.

The only statute in Chapter 12 expressly dealing with the powers of the LCC to direct the bringing of an action is K.S.A. 46-1224. While this statute primarily deals with the powers and standing in courts of the legislative counsel established in K.S.A. 46-1222, K.S.A. 46-1224 also describes the time when the LCC may direct legislative counsel to initiate legal action:

"As directed by the legislative coordinating council, the legislative counsel shall represent the legislature, or either house thereof, in any cause or matter. In cases of quo warranto and mandamus the legislative counsel shall have the same powers and standing in all courts of this state as any county attorney or district attorney has in his or her county or in the supreme court and as the attorney general has in any court. When the legislature is in session, either house thereof by its resolution, or both houses by concurrent resolution may authorize the legislative coordinating council to direct the legislative counsel to bring or participate in any cause or action by representing the legislature or either house thereof or the legislative coordinating council in any court of this state or of the United States. *When the legislature is not in session, the legislative coordinating council may direct the legislative counsel to bring or participate in any cause or action by representing the legislature or either house thereof or the legislative coordinating council in any court of this state or of the United States in accordance with directions of said council*. . . . The legislative counsel shall perform such other duties as are directed by the legislative coordinating council." (Emphasis added.)

K.S.A. 46-1224 is not permissive but restricts the LCC's authority to bring any action during the legislative session. When the legislature is in session, K.S.A. 46-1224 authorizes the LCC to par-

ticipate in directing the bringing of an action only by the resolution of either house, or both houses by concurrent resolution. The expressed legislative intent is that the LCC may not bring an action by representing the legislature or itself while the legislature is in session.

The intent expressed in K.S.A. 46-1224 is consistent with the general powers and functions granted to the LCC in K.S.A. 46-1202. The two basic powers conferred by the legislature upon the LCC are general authority over all legislative services and representation of the legislature when the legislature is not in session:

"The legislative coordinating council shall have *general authority over all legislative services* and such authority shall be exercised by such council as it shall determine, except as otherwise provided by chapter 46 of Kansas Statutes Annotated. *The legislative coordinating council shall represent the legislature when the legislature is not in session.* The legislative coordinating council may adopt and amend rules applicable to its affairs or to the meetings and activities of special committees, standing committees or advisory committees, *except that such rules shall not apply to standing committees meeting while the legislature is in session. When the legislature is not in session,* the legislative coordinating council shall govern the mechanics and procedure of all legislative committee work and activities, except that of the interstate cooperation commission, legislative post-audit committee, state finance council and the ways and means of the senate and the committee on appropriations of the house of representatives when meeting under authority of K.S.A. 46-134a and amendments thereto." (Emphasis added.) K.S.A. 46-1202.

In a comprehensive article in the 1971 Journal of the Kansas Bar Association then Senator Robert Bennett commented on the creation of the LCC that year by the Kansas Legislature:

"[T]he old legislative council was dissolved and in its place a legislative coordinating council was created to generally supervise the work of interim committees. For many years now, opponents of the legislative council indicated that the work was not meaningful because in many instances it was not done by individuals serving on the committee to which any legislative proposal would be assigned during the legislative session. Under this act the legislative coordinating council can authorize the assignment of matters to various types of committees who in turn may meet on these matters during the interim and then are required to file their report prior to the legislative session. The reports which are required under the act should be of great assistance in the interpretation and construction of legislation recommended by the various committees. Perhaps also the intensification of the interim committee system will allow for more thorough and detailed

study and analysis of legislative proposals prior to their actual passage by the legislature itself." Bennett, *1971 Legislative Synopsis*, 40 J.B.A.K. 307, 357 (1971).

The entire thrust of Chapter 12 dealing with the creation and powers of the LCC suggests, as the empowering statute outlines, that the LCC represents the legislature *when it is not in session.* The action filed in this case is one in which the LCC is representing the legislature as a whole even though the vouchers in question emanate from the LCC. This is apparent from both the language used in the petition filed by the LCC and its resolution to bring the action.

The resolution of the LCC directed the Revisor of Statutes to

" '*represent* the Legislative Coordinating Council and *the Legislature* as legal counsel in this matter, *to bring the appropriate court action* to secure the payment of attorney fees and court and transcription costs in the contested election case of *Jones v. Shriver*, and the Revisor of Statutes was directed to file the appropriate court action in this matter as legal counsel and to prosecute the action to conclusion.' " (Emphasis added.)

The petition provides that the action was brought under the authority of Article 2, § 8 of the Kansas Constitution, which provides that each house of *the legislature* "shall be the judge of elections, returns and qualifications of its own members."

It is difficult to conceive of any situation wherein the LCC would be doing anything other than representing the legislature or one of its houses. Thus, while the LCC may have need of acting on its own behalf, ultimately its action in every case involves the representation of the interests of the legislature as a whole.

The LCC advances three arguments in support of its position that neither K.S.A. 46-1202, empowering the LCC to represent the legislature "[w]hen the legislature is not in session," nor K.S.A. 46-1224, limiting the authority of the LCC to bring an action while the legislature is in session, governs this case. First, the LCC points out that it is represented by the Revisor of Statutes, not legislative counsel. The LCC contends that it has independent authority to appoint the office of the Revisor of Statutes as its legal representative and that this power does not change while the legislature is

in session. The LCC asserts that it properly obtained representation for the present action from the Revisor of Statutes.

K.S.A. 46-1211(a) states: "There is hereby established the office of revisor of statutes whose head shall be the revisor of statutes and who shall be appointed by the legislative coordinating council to serve under its direction." K.S.A. 46-1211(b) lists the duties of the Revisor of Statutes:

"The office of revisor of statutes shall perform the following functions: Drafting of bills, resolutions and other legislative documents; legal consultation for members of the legislature and legislative committees; legal research; supervise revisions and compilations of the general laws of this state; prepare and publish Kansas Statutes Annotated, Supplements thereto and publication of additional and replacement volumes thereof; recommend to the standing judiciary committees or to other appropriate legislative committees such bills as will tend to update or clarify existing laws; other duties as provided by law; *and such other legal duties as are directed by the legislative coordinating council.*" (Emphasis added.)

This statute does not expressly provide the Revisor of Statutes with the power to represent the LCC in an action. However, the LCC asserts that the final catch-all phrase includes representation if needed. The LCC notes that there is no statutory time period within which the LCC may direct the Revisor of Statutes to bring an action, unlike an action brought by the legislative counsel pursuant to K.S.A. 46-1224. The LCC therefore argues that this case was properly brought to this court.

In response to the LCC's argument regarding its complete authority to appoint the Revisor of Statutes as legal counsel, the respondents present a statutory interpretation argument. Respondents argue that the provisions of K.S.A. 46-1224, limiting the LCC's authority during the legislative session, are specific and control the general provisions of K.S.A. 46-1211. Therefore, respondents conclude that the LCC's authority with regard to the office of the Revisor of Statutes is also limited during the legislative session. We agree.

Secondly, the LCC relies on the provision of K.S.A. 1996 Supp. 46-1204, under which the LCC is expressly granted the authority to contract with attorneys other than the legislative counsel. This statute provides:

"The legislative coordinating council shall be authorized to contract for purchases of personal property or services, and in the discretion of such council, the same may be made as provided in K.S.A. 75-3739 and amendments thereto. Such council may delegate such authority to make or contract for such purchases or services, except professional services, the director of legislative administrative services. No member or committee of the legislature, except the legislative coordinating council, shall be authorized to employ or contract for professional services to be paid from appropriations for legislative expense or from appropriations to the legislative coordinating council. *The legislative coordinating council may employ by contract and direct one or more attorneys, who are approved by a vote of ¾ of the members of the legislative coordinating council, to represent the legislature, either house thereof, the legislative coordinating council, any legislator, any officer or employee of the legislative branch or any combination of the foregoing, and any such attorney shall be paid from appropriations for legislative expense.* No contract made under authority of this section shall require approval under any other statute." (Emphasis added.) K.S.A. 1996 Supp. 46-1204.

The above statute establishes that both the legislature and the LCC can be represented by attorneys other than the legislative counsel. The legislature has granted the LCC authority to hire an attorney without express direction from the legislature. Moreover, the LCC points out that K.S.A. 1996 Supp. 46-1204 does not limit its authority to the period when the legislature is not in session.

In answer to both arguments, we do not believe that the authority and standing of the LCC to bring an action while the legislature is in session depend upon whom it employs as counsel. K.S.A. 46-1224 expresses a clear limitation upon the authority of the LCC to bring an action while the legislature is in session. To say that the two above-quoted statutes which authorize the LCC to employ the Revisor of Statutes or contract with attorneys thereby empower the LCC to bring an action while the legislature is in session is to render the provisions of K.S.A. 42-1224 meaningless.

We are not at liberty to ignore the expressed legislative intent in K.S.A. 46-1224. " 'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia.*' " *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992). When K.S.A. 46-1224 is read in conjunction with K.S.A. 46-1202, which empowers the LCC to represent the

legislature when it is not in session, the intent to limit the power of the LCC is clear. The legislature has reserved unto itself the authority to bring an action when it is in session.

Finally, the LCC argues that as representative of the legislature while the legislature is not in session, K.S.A. 46-1202, it is the proper party to bring an action regarding a dispute that arose during the interim period. The LCC contends that its standing is appropriate because the vouchers at issue were issued by the LCC. The LCC argues that it has the responsibility to complete the task it began during the interim period. The argument advanced makes sense but for the fact that the legislature has reserved unto itself the authority to bring an action when it is in session. K.S.A. 46-1224. Absent clear statutory authority, the LCC had no standing to bring an action when it did.

The LCC argues that it has acted as legal representative for the legislature in the past and cites several cases in which it was involved to illustrate its participation in legal matters. The cases cited are inconclusive with regard to the LCC's authority to bring an action. First, the LCC was never the plaintiff in any of those cases. Second, as the LCC admits, it was usually represented by the legislative counsel. Third, the LCC did not intervene but simply filed *amici curiae* briefs in three of the seven cases. *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, 643 P.2d 87 (1982); *State ex rel., v. Bennett*, 219 Kan. 285, 547 P.2d 786 (1976); *Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015 (1976). Fourth, in *In re House Bill No. 3083*, 251 Kan. 595, 833 P.2d 1017 (1992), the LCC simply filed written statements, along with many other interested parties, regarding reapportionment legislation at issue. Finally, none of the cases specify whether the LCC acted under a resolution by the legislature.

Finally, we believe that Chapter 12 draws a distinction between bringing an action and providing representation in connection with express legislative concerns and duties. K.S.A. 46-1224 is the only statute that expressly discusses the legislature's and/or the LCC's directing the bringing of an action. K.S.A. 1996 Supp. 46-1204 only speaks of "representation." While the term representation would normally include the bringing of an action, our consideration of

Chapter 12 as a whole and the clear language used in K.S.A. 46-1224 support a conclusion that representation does not include the authority to bring an action while the legislature is in session.

We conclude that the LCC acted beyond the scope of authority granted it by the legislature and had no standing to bring an original action in mandamus when the legislature was in session. Accordingly, we dismiss the action filed.

Petition dismissed.